Phil KRAHN, Administrator of the Estate and Personal Representative of Vincent Cirillo, Deceased, and Betty Louise Cirillo, Appellants (Plaintiffs below),

v.

Geraldine K. PIERCE and Garland R. Reneau, Appellees (Defendants below).

No. 3850.

Supreme Court of Wyoming.

June 14, 1971.

David N. Hitchcock, Laramie, Robert L. Tognoni, Englewood, Colo., for appellants.

Alfred M. Pence, of Pence & Millett, Laramie, for appellee Garland R. Reneau.

No appearance for appellee Geraldine K. Pierce.

Before McINTYRE, C. J., and PARK-ER, McEWAN, and GRAY, JJ.

Mr. Justice GRAY delivered the opinion of the court.

Plaintiffs brought an action to recover damages for injuries incurred in an accident involving the Cirillo car driven by decedent in which his wife, Betty Louise Cirillo, was a passenger; the car driven by Geraldine K. Pierce, a party defendant; and a station wagon driven by Garland R. Reneau, also named as a defendant. During the pendency of the action, plaintiffs and the defendant Pierce entered into a "Covenant Not to Execute" and for such reason counsel for defendant Pierce did not appear or participate in the trial of the case. The jury, however, was instructed that such fact should be disregarded in its deliberations, and in arriving at a verdict or verdicts the jury was told to consider the matter as though defendant Pierce was present with counsel throughout the trial. Four separate verdicts were returned by the jury. In two of those verdicts the jury found generally for the plaintiffs and against the defendant Pierce and assessed damages in favor of the plaintiff-administrator in the sum of $10,000 and for plaintiff Cirillo in the sum of $7,500. In the other two the jury found generally for the defendant Reneau and against the plaintiffs. Judgment was entered accordingly, a motion and amended motion by plaintiffs for new trial were denied, and plaintiffs have now appealed from the said judgment. The defendant Pierce did not appear or participate in the appeal.

Turning briefly to the circumstances with respect to the accident, the record discloses that the Cirillo car, shortly after 9:45 a. m. on January 26, 1968, was proceeding northward on U. S. Highway 287 and had reached a point some four miles north of the Colorado-Wyoming State line at a "Do Not Pass" zone on the two-lane highway. At the time of the accident and prior thereto intermittent fog was encountered, which at times was quite dense, and the highway at that point was very icy and "slick" and "slippery." The defendant Pierce's car was proceeding south on the highway, and according to her testimony about the time that she was approaching the scene of the accident the fog "kept getting denser" and she slowed to about 40 m. p. h. Suddenly a truck, also proceeding southward but at a slower speed, loomed up in front of her and she "touched my brakes very lightly to try and slow myself down." As she did so the front end of her car "veered" to the left and she tried to get "into the left-hand borrow-pit." During that maneuver she collided almost head-on with the Cirillo car in its own lane of travel and remembered nothing further.

The defendant Reneau was proceeding northerly on the highway behind the Cirillo car and testified that some two miles dis-

ant from the scene of the accident he encountered heavier fog than previously encountered, and also ice, and had reduced his speed to 25 m. p. h. At the scene of the accident the fog was "very heavy" and he slowed to 20 m. p. h. He then said, "As I came in out of the fog the first thing I saw was a car [the Cirillo car], was a man hanging out of a car crosswise in the road," which he previously fixed as some 50 feet distant. He attempted evasive action without success and the right front fender of his station wagon came in contact with the Cirillo car in the area over the right rear wheel.

The Cirillo and Pierce cars, as disclosed by the pictures taken at the scene, were extensively damaged and according to the investigating highway patrolman were "total" losses. He also said the damage to the Reneau station wagon was "major," which also is borne out by the pictures. As a result of the accident plaintiff Cirillo's husband was killed and she was badly injured. Further elaboration of the evidence presented will be made in our discussion of the specific points raised by plaintiffs on this appeal.

■ In support of their claim of error in the trial, the plaintiffs advance some twelve points, all relating to procedure. Some relate to the issue of damages and will not be discussed for the reason it is not asserted that the verdict exonerating Reneau from liability was not supported by substantial evidence. In addition, no attack is made on the amount of damages assessed, and thus any error with respect to evidence relating to the issue of damages is harmless and not grounds for reversal. Northwest States Utilities Co. v. Brouilette, 51 Wyo. 132, 65 P.2d 223, 235, rehearing denied 69 P.2d 623.

■ The first point raised relates to the failure of the trial judge to discharge and dismiss a prospective juror for cause. In the voir dire examination of Eugene E. Dunn it was established that there was a relationship of attorney and client between his father, whose business was managed by

Eugene, and the law firm of which Mr. Pence, representing Reneau, was a member. The effect of such a relationship was extensively discussed by this court in Redwine v. Fitzhugh, 78 Wyo. 407, 329 P.2d 257, 261, 72 A.L.R.2d 664, rehearing denied 330 P.2d 112, and it was there held under our statute, § 1–121, W.S.1957, which does not specify such a relationship as a disqualification of a prospective juror, that any bias or prejudice which might be said to result from such a relationship was "at the most, only a rebuttable presumption, and that the fairness and impartiality of the juror is a matter of fact to be determined by the trial court in the exercise of its sound discretion." While we will agree that Dunn in some of his responses was somewhat vacillating, when the voir dire is considered as a whole we cannot say that the trial judge abused his discretion in concluding that the juror would not be unfair or partial in his deliberations. In Redwine it was also mentioned that no case was found, absent a statute, wherein it was held to be "reversible error" to overrule a challenge for cause because of the relationship, and the annotation on the subject in 72 A.L.R.2d 682, § 7(a), as supplemented by the Later Case Service, discloses that the same situation continues to prevail.

The next point relates to the exclusion of an opinion of highway patrolman Isabell with respect to a "gouge mark" upon the highway made by a piece of metal from the "A" frame of the Cirillo car before it came to rest following the collisions with the defendants' vehicles. By way of preface to the point raised, the record discloses Isabell was patrolling the highway and while some two miles north of the scene of the accident received notice of its occurrence. He arrived at the scene at 10 a. m., observed the circumstances existing, and called for assistance. Patrolmen Kopriva and Brown responded shortly thereafter and assisted Isabell in the investigation, particularly with respect to "the point where the debris existed," the location of the vehicles on the highway following the collision which had not been moved, the

measurement of pertinent distances, and the taking of pictures. The so-called "debris" area was roughly a little right of the center of the northbound lane. The "gouge mark" started there and in a "continuous uninterrupted mark" ran in an arched curve to the north which bordered the centerline of the highway, ran underneath the rear of the Reneau station wagon, where it came to rest at approximately one-half the distance of the "gouge mark," then veered to the northeast under the front of the Cirillo car, where it came to rest, for a total distance of 59 feet from the point of beginning. The witness was then asked if from his experience as an officer he had an opinion "as to whether or not that [the "gouge mark"] was made from one movement or two movements." This was objected to as "calling for a conclusion without proper foundation." The patrolman was permitted to answer "yes" or "no" if he had an opinion, and upon stating he did have an opinion was again asked to give his opinion. Defendant again objected on the ground this was "Improper, invading the province of the jury, calling for a conclusion of the witness." The objection was sustained.

No offer of proof was made and it is not entirely clear to us, and apparently was not clear to the trial court in view of a later ruling on a similar question put to patrolman Brown which we shall later mention, as to the nature of the testimony plaintiff was attempting to elicit and for what purpose. Reference is made in their brief to generalities as to the facts being subtle and complex, with which we can agree, but it is not pointed out wherein that testimony was particularly pertinent in view of the evidence preceding it relating to the "gouge mark" or what effect the exclusion of the opinion might have had upon the verdict of the jury. No doubt we would be justified in rejecting the point on that basis alone. Watson v. Klindt, 73 Wyo. 402, 280 P.2d 282, 283.

We are not so inclined, however, inasmuch as the point poses an important problem concerning the admissibility of expert testimony, particularly with respect to the mounting liberal trend in motor vehicle accident cases. Neither do we think, as argued by the defendant, that the point should be disposed of on the basis that the ruling was based on the lack of foundation. It is equally reasonable that the ruling was based upon the oft-applied rule that the opinion would invade the province of the jury. What we say here will also relate to some extent to another point raised concerning testimony as to "safe speed."

We have in the past, with the exception of expert valuation testimony, rather strictly applied the rule with respect to expert testimony invading the province of the jury. Macy v. Billings, 74 Wyo. 404, 289 P.2d 422; State ex rel. Kirk v. Gail, Wyo., 373 P.2d 955, 957; Taylor v. MacDonald, Wyo., 409 P.2d 762, 764. The rule has its roots in the philosophy that if the facts are as apparent to a layman as to an expert the rule comes into play. That, however, often leads to difficulty and inconsistencies in the trial of cases, particularly where, as here, the facts are subtle and complex. The exclusionary rule has been severely criticized by eminent authors in works pertaining to the rules of evidence as reflected in the informative opinion emanating from the Supreme Court of Wisconsin in the rather recent case of Rabata v. Dohner, 45 Wis.2d 111, 172 N.W.2d 409. Several of the state courts now accept the modified view there expounded that if the testimony or opinion of a qualified expert will be of aid to the trier of the fact, it is admissible even though it might embrace an ultimate fact in issue. In a large measure, it would appear that the trend was initiated by Rule 401, A.L.I. Model Code of Evidence (1942), which had for its purpose needed revision of the rules pertaining to opinion evidence.

Likewise, the Federal courts have increasingly adopted such view. For example, the fairly recent case of Clifton v. Mangum, 10 Cir., 366 F.2d 250, involved "gouge and scrape marks" on the highway and the critical issue of which

truck was on the wrong side of the highway at the time of impact. Expert testimony on such issue was offered by both parties and received. The jury returned a verdict for the defendant and plaintiffs appealed. The principal claim of error was that the opinion of defendant's expert was incompetent for the reason it did not involve special skill "but was equally within the knowledge and comprehension of the lay jury," 366 F.2d at 252. After discussing a previous holding on a similar question in which the court left open to expert testimony an issue "involving causes and effects which are not within the range of knowledge and comprehension of the lay trier of the facts," the court rejected plaintiffs' contention and said the case involved "the identification of the offending vehicle by scientific analysis of the incriminating scrape—a matter not within the knowledge and comprehension of the jury. As we observed in Campbell [Campbell v. Clark, 10 Cir., 283 F.2d 766], the admissibility of testimony of this nature must be left to the sound discretion of the trial court. It is only when the proffered evidence is clearly within the comprehension of a layman that we will disturb its judgment." 366 F.2d at 253. However, it is interesting to note that in a later case, Wilkins v. Hogan, 10 Cir., 425 F.2d 1022 (decided May 18, 1970), the court was again confronted with an expert opinion concerning "gouge marks" and "debris" upon the highway. The opinion embraced some three ultimate issuable facts. In holding that the opinion was admissible and constituted substantial evidence supporting the verdict, the court made no mention of an invasion of the province of the jury and on the contrary necessarily regarded such opinion as being of aid to the jury.

On the other hand, the court in Krizak v. W. C. Brooks & Sons, Incorporated, 4 Cir., 320 F.2d 37, 42, sustained the trial court's exclusion of the opinion of an expert "accidentalogist" as to several ultimate issuable facts, including that the "gouge marks and debris on the road * * * do not necessarily lie at the point of impact,"

on the basis that the facts appeared obvious to a layman and consequently expert testimony was unnecessary. After remarking, however, that "the trial court might well have permitted greater latitude," the court stated, "Whether in any given case, the expert testimony is necessary to aid the jury in its search for the truth depends upon such a variety of factors readily apparent only to the trial judge that we must depend heavily upon his judgment."

In this connection attention is also directed to Rules 702 and 704 of the Proposed Federal Rules of Evidence, Revised Draft March 1971, 51 F.R.D. 315. Those rules provide:

Rule 702

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Rule 704

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

The Advisory Committee's Notes with respect to the proposals are most informative as to the need for the proposed revision.

It is not the purpose, of course, of the modified view entirely to let down the bars concerning expert testimony. As pointed out, there are adequate safeguards inasmuch as the trial courts in the exercise of their discretion may still exclude testimony which is deemed unnecessary or not helpful to the trier of the facts or which simply wastes time, or as the committee states:

"* * * These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. * * *"

51 F.R.D. 405.

We have not recently had an opportunity to consider the point raised here in the light of the foregoing developments and mention has never been made in previous opinions of this court of the applicability of that portion of Rule 43(a), W.R.C.P., which was taken verbatim from the Federal Rules of Civil Procedure, reading as follows:

"* * * In any case, the statute or rule which favors the reception of the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. * * *"

It has often been said by the Federal courts that such is a rule of "admissibility" and not an "exclusionary" rule. See 2B Barron and Holtzoff, Federal Practice and Procedure, §§ 961–962, pp. 207–209 (1961). The Federal courts, of course, have now recognized the necessity of entirely revamping the rules of evidence, and while the proposals have not yet been brought to fruition there appears to be no good reason why we should not profit from their experience and teachings and now consider the objectives sought to be attained.

■■ With that in mind we think the trial court might well have permitted patrolman Isabell to have stated his opinion to the question as put, but as pointed out above there was a lack of clarity with respect to the nature of the testimony. For such reason we do not say that the exclusionary ruling was clearly erroneous. We would point out, however, that when the purpose of the inquiry had been clarified by the questions put to patrolman Brown the trial court quite properly recognized that such testimony would be of aid to the jury as constituting an informed expert analysis of the "scrape mark" and over objection allowed the patrolman to express an opinion on the matter of the "movement" of the Cirillo car following the collision as disclosed by the following:

"Q. In this particular accident did you have the ability, did you have the information before you that would give you sufficient information to ascertain whether, to give you an opinion as to whether or not this movement and gouge mark of 59 feet was caused by one collision rather than two, or two collisions rather than one? A. I have an opinion, yes, sir.

"Q. All right. Would you now state what that opinion is?

"MR. PENCE: We object to the question. Same grounds that were previously objected on, and in addition we want to say that this amounts to interpretation of physical facts that were present at the scene of the accident to which has been testified to by both patrolmen, and it is a finding of fact which is wholly within the province of the jury.

"THE COURT: This is opinion evidence. I think he is qualified to give his opinion as to whether there was another impact. I think he can make that opinion. He may answer. The objection is overruled.

"Q. What is your answer? A. The continuous arch of the gouge mark and line wasn't deviated either direction except in the arch which would indicate to me that there was the second collision.

"Q. And that is your opinion, sir? A. Yes, sir.

"Q. Based on the fact that there was, and everybody admits there were two collisions in this particular case, which of the collisions caused the 59 feet of skid marks, I mean 59 feet of gouge marks, in your opinion? A. The second collision."

This brings us to the next point, that the court erred in permitting the three patrolmen above mentioned to testify on crossexamination that a speed of 35 to 40 m. p. h. when they encountered the icy condition of the highway some two to four miles from the scene of the accident was a "safe speed."

The matter first came up in the testimony of patrolman Isabell. On direct he had

testified that as he approached the scene he slowed to 25 to 35 m. p. h. On cross he first said that about the time he was notified of the accident and discovered the icy condition of the highway he drove about 35 m. p. h., "Give five miles either way." He was then reminded that he had testified in another trial to a speed of between 35 and 45 m. p. h. prior to the time he received the message, which he affirmed, and was then asked, "Did you consider that a safe speed at the time?" Plaintiff objected on the same grounds defendant had objected to the opinion on the "gouge marks." The objection was overruled and Isabell answered, "Yes."

At first blush it would appear that such testimony was somewhat remote, having been directed to the conditions prevailing some two miles from the scene of the accident. In the light of the testimony, however, that the icy condition was constant from that point on and his direct testimony that he slowed to 25 to 35 m. p. h. at the time of approaching the scene and the later testimony of the defendant Reneau that he had reduced his speed to 25 m. p. h. when he encountered the ice some two miles south of the accident, and to 20 m. p. h. when approaching the scene, the significance of the "safe speed" expert opinion is apparent.

Concededly this presents a close question. Inherent in the opinion is the vital question of whether or not defendant Reneau's speed was "reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing," as § 31–130, W.S.1957, C.1967, requires. At the time the opinion was elicited the jury had before it testimony of the icy condition of the highway and the hampered visibility due to the fog. Thus, in view of what we said in the Macy case, supra, there is some merit in plaintiffs' contention that the jury on the facts before it was capable of determining the ultimate issue without the expert opinion of the patrolman. The trial court, however, in ruling upon the matter was apparently of the view that such testimony

would be of aid to the jury and hence the ruling. Whether we would be warranted in holding that the ruling was clearly erroneous and prejudicial is a matter of some doubt. Such determination is dependent upon the facts and circumstances of each case. Taylor v. MacDonald, supra.

Most of the authorities we have examined, including Taylor, deal with a patrolman's opinion of speed as reflected by skid marks and do not reach the question here involved. Nonetheless there is a substantial line of authority to the effect that under proper circumstances opinions such as we have here are admissible. White v. Zutell, 2 Cir., 263 F.2d 613, 614; Ferguson v. Hurford, 132 Colo. 507, 290 P.2d 229, 235–236; Ware v. Boston & M. R. R., 92 N.H. 373, 31 A.2d 58, 60; Talley v. Fournier, 3 Wash.App. 808, 479 P.2d 96, 100, 101. The rationale of the holdings seems to be that it is for the trial court first to determine if the proffered expert is qualified and the proffered opinion would be of aid to the jury. If held admissible the jury is at liberty to reject it and it still leaves with the jury the responsibility of determining the ultimate fact. There are, of course, holdings to the contrary. Gardner v. Pereboom, 197 Kan. 188, 416 P.2d 67, 72–73. In McClure v. Latta, Wyo., 348 P.2d 1057, 1060, we were confronted with substantially the same circumstance presented here, but inasmuch as the opinion came in without objection we did not pass on the question although we did say, "the jury was entitled to consider the patrolman's opinion in arriving at its verdict."

█ In the light of what has been said with respect to expert opinion, and in view of the unusual and extraordinary circumstances presented by the icy condition of the highway and the fog, we cannot say with assurance that the opinion here challenged was not of aid to the jury. The trial court was in much better position than are we to decide the matter, and consequently we hold there was no error in the trial court's ruling.

The same point is raised with respect to the question put to plaintiff Cirillo on cross-examination as to whether or not she considered the speed of 35 m. p. h. at which the Cirillo car was traveling prior to the accident a "reasonable" or "safe and proper" speed under the circumstances, to which over objection that she was not an expert she answered, "Yes." As we view it, the objection made was not a valid objection. It is well established that a nonexpert may, upon a proper foundation, testify with respect to the speed of a moving motor vehicle. Colwell v. Anderson, Wyo., 438 P.2d 448; Cederburg v. Carter, Wyo., 448 P.2d 608. It is true, of course, that the matter of a nonexpert opinion relating to a "reasonable" or "safe" speed was not involved in those cases. Nevertheless, the claim of error advanced here is basically that the opinion embraced an ultimate fact to be determined by the jury and it is clear that the objection made was not sufficient to raise that point. For such reason we do not decide the point and hold that there was no error by the court in overruling the objection. Murdock v. State, Wyo., 351 P.2d 674, 679.

The next point relates to defendant Reneau's defense of "unavoidable accident." It is first asserted that the trial court erred in refusing to strike such defense from the answer on the ground that it did not constitute a separate defense but was merely a reiteration of the denial of negligence. With that as their premise they then assert the trial court erred in giving an instruction on "unavoidable accident." There is no contention that there was a lack of evidence in support of the doctrine. The matter is presented here solely on the broad question of whether or not as a matter of law the instruction should ever be given.

While plaintiffs find support for the contentions in other jurisdictions, it has no merit under previous decisions of this court. In Friesen v. Schmelzel, 78 Wyo. 1, 318 P.2d 368, 371, we defined the term as meaning "an accident in which there is no negligence by either party." We also held

the defense was available—even though not pleaded—and Rule 8, W.R.C.P., has not abrogated that concept. Thus, it seems strange that plaintiffs would complain about advance notice of such a defense by way of answer. Even had the court granted the motion, the defense would still have been available.

That case also inferentially approved the giving of an instruction on "unavoidable accident." We again considered the matter in the recent case of Potts v. Brown, Wyo., 452 P.2d 975, 979, and although the refusal of the trial court to give the instruction tendered was upheld we indicated the propriety of such an instruction if the circumstances were such as to warrant it. Peculiarly, we have not directly passed upon the matter but what we have said must certainly be taken as subscribing to the generally prevailing rule that such is proper in an appropriate case. 8 Am.Jur.2d, Automobiles and Highway Traffic, § 1032, p. 591; 13 Blashfield Automobile Law and Practice, § 463.8, p. 683 (3d Ed.).

Additionally we mention that plaintiffs tendered two separate instructions with respect to "unavoidable accident," and while the court refused those instructions and gave the instruction of which plaintiffs now complain they seem to have overlooked the rule that they have no standing to attack an instruction which they have invited. Bagley v. Watson, Wyo., 478 P.2d 595, 598.

In addition to the foregoing, plaintiffs complain about the refusal of the trial court to grant their motion for a directed verdict on the issue of liability of the defendant Reneau based primarily on obscured visibility and two instructions tendered and refused dealing with the same subject. We find no merit in these contentions. We have already pointed out that the evidence was sufficient to sustain the verdict exonerating Reneau from negligence and on the whole the instructions given were adequate.

We also previously mentioned that we would not here notice procedural matters relating to the issue of damages and we have not done so. We feel, however, that it may not be amiss briefly to comment upon the refusal of the trial court to give the instructions tendered by plaintiffs pertaining to concurrent negligence but on the contrary to give an instruction that each defendant was responsible only for the damages each might have caused. Plaintiffs have devoted a large portion of their brief to this point, relying upon a vast array of authority to support their claim, and defendant in meeting the argument has done the same in support of the trial court's ruling.

We have heretofore dealt with this intricate and involved problem where more than two motor vehicles were involved in an accident in Cameron v. Lockhart, 79 Wyo. 187, 332 P.2d 65, and Tyler v. Jensen, 75 Wyo. 249, 295 P.2d 742. For purposes here, however, we need not elaborate upon what was there said generally concerning the problem. The problem here is simply whether or not there was sufficient evidence to enable the jury to apportion the damages for the physical injuries inflicted by each defendant in their respective collisions with the Cirillo car. All parties concede that the collisions were separate and distinct; neither do they dispute the fact that only a few seconds could have elapsed between the two occurrences. That, however, furnishes no solution to the problem, and we think the question of whether or not the damages were divisible, which was a close question under the circumstances presented, might well have been left to the jury under proper instructions.

■ Nevertheless, even if the trial court was in error, we think there is merit in defendant's contention that it could not be held to have been prejudicial. As defendant points out, the jury, as instructed, was called upon first to determine if the defendants, or either of them, were guilty of actionable negligence, and by its separate verdict exonerated the defendant

Reneau. Just how the matter of concurrent negligence could have entered into that determination is not pointed out. As we view it, the most it could have done was to shift liability for the total amount of the damages from both of the defendants to the defendant Pierce, and, as we have seen, plaintiffs' case against Pierce was settled and the amount thereof exceeded the amount awarded by the jury. Consequently there could be no prejudice on that score and it would be speculative indeed to suggest that if both defendants were held liable the amount of damages allowed by the jury would have been increased.

■ Lastly plaintiffs, pursuant to Rule 75(f), W.R.C.P., which has since been superseded by Rule 75(b), W.R.C.P., ask that costs be imposed upon the defendant Reneau for designation of all of the transcript of evidence to be included in the record on appeal not theretofore designated by the plaintiffs and which is asserted to be unessential to decision of the points raised on appeal. The defendant's designation included all of the medical testimony relating to the physical injuries suffered by the Cirillos, which is somewhat extensive and is the principal cause of plaintiffs' complaint. In defense of the designation, defendant asserts that such testimony was relevant and significant on the points raised with respect to concurrent negligence. We are inclined to agree. Much of it, of course, did not bear directly upon the point but interspersed throughout that testimony was the nature of the injury, which in turn had a direct bearing upon the generative force that could have caused the injury. For example, there was testimony, in addition to the fractures suffered by the plaintiff Betty Cirillo, of multiple cuts and lacerations on her face, neck and head. There was also testimony that the death of Vincent Cirillo was caused by a crushed chest and that of Kenneth C. Miles, who was a passenger in the Cirillo car, by a skull fracture on the front and right side and a crushed chest. That such testimony had a direct bearing upon the question of whether or

not such injuries were caused by the defendant Pierce or by the claimed concurrent negligence of both defendants can scarcely be doubted.

The fact that we found it unnecessary extensively to analyze the testimony on this hotly contested point in disposing of the point cannot be taken to mean that defendant's counsel was guilty of misconduct or without a reasonable basis for presenting an unfragmented record of the circumstances bearing upon the question. For such reason we decline to impose the costs thereof upon the defendant.

Affirmed.