No. 12138

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

THE STATE OF MONTANA, Acting by and through
the State Highway Commission of the State
of Montana,

　　　　　　　　　Plaintiff and Respondent,

　　-vs-

DONALD V. ROTH and JEANNE A. ROTH,
HUSBAND AND WIFE,

　　　　　　　　　Defendants and Appellants.

---

Appeal from:　District Court of the Fourth Judicial District,
　　　　　　　Honorable Jack L. Green, Judge presiding.

Counsel of Record:

　　For Appellants:

　　　　Edward T. Dussault argued, Missoula, Montana.

　　For Respondent:

　　　　K. M. Bridenstine argued, Helena, Montana.

---

　　　　　　　　　　　　Submitted:　March 15, 1972

　　　　　　　　　　　　　Decided:　MAY 11 1972

Filed:　MAY 11 1972

　　　　　_Thomas J. Kearney_
　　　　　　　　　　　　　　Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from a judgment entered in Missoula County district court on a jury verdict in the amount of $7,250, in a condemnation action brought by the State of Montana, respondent herein, to acquire certain water rights and waters of the defendants, appellants herein.

The facts in this case may be summarized as follows: This eminent domain action was filed by the State Highway Commission of Montana (hereinafter referred to as Commission) to acquire an interest owned by defendants Donald V. Roth and Jeanne A. Roth, for Interstate highway purposes.

The interest to be acquired is a water appropriation dated in the year 1910, which may be designated as a "stream" flowing out of culvert No. 233 on the Northern Pacific Railway line. The notice of appropriation did not specify any amount of water. Further, the exact point of appropriation was not accurately determined at trial, as none of the witnesses were able to pinpoint culvert No. 233.

There was a culvert under Highway 10 which connected to a 24" x 12' pipe, which in turn connected to a 36" x 72' pipe under the Northern Pacific mainline. This latter 36" x 72' pipe discharged into a ditch running parallel to and along the southerly portion of the Northern Pacific right-of-way to a point where it intersected the Clinton Irrigation District canal. Pursuant to a long standing agreement between defendant Donald Roth and the Clinton Irrigation District Commissioners, waters from this ditch were conducted in the canal to a point of intersection with Roths' private ditch and then on to Roths' water irrigation system.

The Interstate project relocated the Clinton Canal and reestablished defendant Donald Roth's connection with it through a system of pipe-headgate and ditch, pursuant to the request of Roth for the restoration of irrigation water to his lands. In addition to the water appropriation in question, defendant Roth owned about 600 inches from the Clark Fork River which, through an agreement with the Clinton Irrigation District commissioners, was conveyed

to his headgate free of charge as consideration for the commissioners being able to use Roth's former ditch. No dispute lies as to the continued availability of this 600 inch water right after Interstate construction. The water right in question originated from lower Gaiser Slough, situated across Highway 10 from the ditch. No evidence was offered as to the condition of the pipes under the old highway and the Northern Pacific mainline, or the amount of water in the slough or its source. Further, there was no evidence showing lower Gaiser Slough connected to the upper Gaiser Slough in 1910, or before.

The state did introduce evidence showing the two sloughs were connected by a corrugated metal pipe; however, no evidence was introduced as to the condition of the pipe or if the water flowed through it in 1968.

The evidence showed that after the Interstate is built, lower Gaiser Slough is to be filled with "shot rock", then drained by a buried 18" perforated concrete drain connected to a 30" pipe under the Interstate and present Burlington Northern mainline. In addition, the latter would then connect with an existing 30" concrete pipe under the adjoining Milwaukee mainline to discharge into a ditch constructed as part of the project to convey water back into the Clinton Canal at a point south of the Milwaukee mainline. The testimony indicated the system would return a substantial amount of water, and that drainage from this system would be available to defendants.

It was defendants' contention that they should receive $32,500 compensation for the acquisition of this appropriation at culvert No. 233. Their expert appraiser, Melvin Beck, valued the appropriation at $140 per miner's inch, for 90 miner's inches, totalling $12,600. Mr. Beck then testified to replace the lost "stock water", three wells at a price of $7,000 each would be required. The court then required Beck to elect between the two value figures for the taking. Consequently Beck chose the three wells at $7,000, totalling $21,000. Beck attempted to evaluate the appropriation,

first for irrigation water purposes, and then for stock water purposes.

The commission presented testimony from Ivan Shaw, an expert appraiser, who predicated compensation on construction plans, and the cost of one stock water well at $5,000. Defendants' counsel cross-examined Shaw at length about water from under the fill in lower Gaiser Slough, and Shaw testified the water would be recovered. The well drilling costs were authenticated by witness William Osborne, the well driller.

Instructions to the jury included defendants' proposed No. 7, given over objection as court's instruction No. 13, in which the high compensation testimony of defendant Donald Roth of $32,500 and the low testimony of Shaw at $5,000 were stated as the limits for the jury. There was no objection by either of the parties as to the form of the verdict. The jury returned a verdict for Roth, awarding him $7,250 compensation.

Appellants raise two issues for review in this matter:

(1) That the trial court erred in refusing to allow testimony of comparable sales of water for irrigation purposes; and

(2) That the verdict was rendered on state's evidence not supported by fact.

We find no merit whatsoever in defendants' contention that the district court erred in limiting the defendants to testimony relating to the value of Gaiser Slough waters to stock water value only. Specifically the record shows defendants did put into evidence a comparable sale of 61 inches of water for irrigation purposes that was sold for $140 per miner's inch. Defendants contend that the district court, by its ruling, took away from the jury the right to consider the value of Gaiser Slough waters for irrigation purposes, when the record was replete with testimony of the use of the water for irrigation purposes for twenty-nine years by the defendants and for three decades prior thereto by their predecessors.

Our review of all the testimony contained within the record indicates this was not at all the case and we deem it necessary to state with particu-

larity the actual sequence of events at the trial of this matter which lends clarity to the jury's verdict. The record shows that Melvin Beck, defendants' expert appraiser, testified he had a comparable sale of water for irrigation purposes wherein 61 inches of water was sold for $140 an inch. A second offered sale was correctly refused by the court on the ground of surprise. At a later point in the trial of this matter, the court required Mr. Beck to elect which of the two valuations of the thing taken he would use, then excluded the other. Mr. Beck used the measurements made by witnesses Carden and Marlowe, of 90 miner's inches applied to the appropriation in question, multiplied by $140 an inch, for a total of $12,600 for the water claimed to be acquired by the Commission. Beck then revalued this same water for stock water purposes, measuring this particular value by the extension of cost of three wells at $7,000 each, or $21,000. From the foregoing, it is clear that had the court allowed Beck to add $12,600 and $21,000, this would have totalled $361.50 or more per miner's inch, amounting to a double value of the "taking".

Defendants cite the decision of Perkins v. Kramer, 148 Mont. 355, 423 P.2d 587, for the proposition that it is the announced policy of this state to promote the irrigation of land whenever possible, and therefore in the instant case the court's taking of an irrigation right without any compensation whatsoever is contrary to that decision. We hold the Perkins case bears no applicability to the matter before us. In addition the record shows there was no evidence that defendants lost irrigation water. The facts show defendants received 600 inches of water from the Clark Fork River, which was carried free of cost to them at their ditch. Defendant Donald Roth further admitted he could only make beneficial use of 140 miner's inches. Defendants state the following in their brief:

> "As we stated, not only did the defendants and their predecessors have an established water right since 1910 out of the Gaiser Sloughs, they had also established a ditch right to convey said waters from lower Gaiser Slough to their property situated nearly 2 miles away.

> Most of said ditch right was on Northern Pacific
> (Burlington-Northern),Milwaukee Ry. and public
> domain. In 1946 the State recognized the water
> right and ditch right of defendants by placing a
> 24 inch concrete pipe for a distance of over 1600
> feet under the then relocated Highway 10, East."

Our examination of the record indicates defendants failed to prove at the trial any of the above allegations. The 1910 appropriation specified no source, no amount, nor any ditch right. We can find nothing to support defendants' contention that they had any ditch right on railway property or public domain, nor did defendants offer any evidence to support their contention that the state "recognized" their rights in 1946 by putting in a pipe between upper and lower Gaiser Sloughs. If this evidence was essential at trial, and if proof of these "facts" was necessary to support defendants' demands, defendants, not the commission, had the burden of proof to establish them. St. Hwy. Comm'n v. Emery, 156 Mont. 507, 481 P.2d 686; State Highway Comm'n v. Barnes, 151 Mont. 300, 433 P.2d 16; State v. Peterson, 134 Mont. 52, 328 P.2d 617.

In its simplest form, this matter before us involved a resolution of a factual question by a jury, namely, the determination of a value for the interest defendants owned and the state of Montana acquired. The court properly instructed the jury that they could award defendants compensation as high as $32,500, defendants' demand, or $5,000, which comprised the state's value evidence. We cannot countenance defendants' contention that the court's limitation of witness Beck's testimony to $21,213 limited the jury's considerations of appropriate value.

We find, in addition, no merit to defendants' final point of contention that the verdict was rendered on state's evidence not supported by fact. First, the record reveals that the Commission did not guarantee anything would drain from the proposed system, nor that the defendants would, in fact, receive any water from it. The Commission's fee appraiser, Mr. Shaw, refused to guarantee defendants would receive water from the new system of drains, though he stated,in his opinion,he felt approximately 70 inches would be

- 6 -

recovered. No effort was made by defendants to move to strike or modify Shaw's opinion testimony. There was no stipulation or agreement by the Commission that water would be recovered after construction. Referring specifically to the 30" pipe under the Milwaukee Railroad mainline, to which the drainage system was to be connected, Mr. Jerry Tahija, state's witness, testified the connections were not completed at the time of trial, and Shaw testified there was a "pretty nice stream there". Defendant Donald Roth returned to the stand for rebuttal and testified exactly to the contrary, denying there was "any" stream coming from that specific pipe. There was, therefore, a factual situation for the jury to resolve.

It has long been the rule of law in this state and other jurisdictions that in the absence of a clear showing of abuse of discretion the determination of the trial court in granting or denying a motion for a new trial will not be disturbed. State Highway Comm'n v. Manry, 143 Mont. 382, 390 P.2d 97. Further, the burden is on the movant to prove abuse of discretion. State Highway Comm'n v. Schmidt, 143 Mont. 505, 391 P.2d 692.

In addition, it is a principle of law in this state that where there is substantial evidence to support a verdict, the lower court's refusal to grant a new trial will not be disturbed. Kincheloe v. Rygg, 152 Mont. 187, 488 P.2d 140.

Our review of all testimony contained herein leads us to the conclusion there was substantial evidence to support the jury's verdict. The jury was asked to determine one sum for their award to defendants. The verdict form submitted by defendants required only that one sum, and in fact the amount awarded the defendants by the jury was higher than the evidence offered by the Commission. We feel instruction No. 13 which reads in part as follows was proper:

> "You may not award compensation in excess of the amount claimed by the defendants, which amount is $32,500.00; nor may your verdict be less than $5,000.00, the amount of the lowest testimony offered by the State in this matter."

- 7 -

Finally, defendants seem to infer in their brief some misconduct by the jury in the trial of this matter. They attempt to establish such misconduct by an affidavit of their counsel filed with their motion for a new trial, and a statement in their brief that they had affidavits of three jury members. Whatever defendants' contention of any jury misconduct, it is the law of this state a jury cannot impeach its verdict on affidavits of any member or members of the jury except for that ground set forth in section 93-5603(2), R.C.M. 1947. Rasmussen v. Sibert, 153 Mont. 286, 456 P.2d 835. Further, nothing in this appeal raises the rule of Goff v. Kinzle, 148 Mont. 61, 417 P.2d 105.

For the foregoing reasons, the judgment is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Associate Justices

- 8 -