ELITE CLEANERS AND TAILORS, INC., a Wyoming corporation, and Richard L. Martin, Appellants (Defendants below),

v.

William S. GENTRY, by his next friend, Mary Lynn Gentry, Appellee (Plaintiff below).

No. 4166.

Supreme Court of Wyoming.

June 8, 1973.

Carl L. Lathrop, and David D. Uchner, Lathrop, Uchner & Mullikin, Cheyenne, for appellants.

David H. Carmichael, Hanes, Carmichael, Johnson, Gage & Speight, James A. Tilker, Kline & Tilker, Cheyenne, for appellee.

Before PARKER, C. J., and McEWAN, GUTHRIE and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

This action arose out of an intersection collision at 24th Street and Duff Avenue in Cheyenne. It is undisputed that the intersection was uncontrolled and that the speed limit in that area was 30 miles per hour. The plaintiff, William S. Gentry, who was about 45 years of age at the time of the accident, was operating a motor scooter in an easterly direction on 24th Street. The defendant Richard L. Martin was driving a Ford delivery van owned by Elite Cleaners and Tailors. He was going in a northerly direction on Duff Avenue.

The jury found for plaintiff and against the defendants and returned a verdict of $104,813.41. The defendants have appealed, presenting for our consideration these questions:

(1) Did the trial court err in not granting defendants' motion for a mistrial?

A. Was the mention of "insurance" by the plaintiff upon direct examination in the personal injury action reversible error?

B. Was the jury guilty of prejudicial misconduct in considering defendants' insurance coverage in their deliberations?

(2) Was there sufficient evidentiary foundation for the opinion testimony of plaintiff's expert, Richard Crawford, as to the point of impact and speed of the vehicles; and was his testimony competent?

(3) Was the plaintiff, as a matter of law, guilty of contributory negligence or negligence which was the proximate cause of the accident?

*Mention of Insurance*

Defendants' claim of error in connection with the trial court's denial of their motion for a mistrial is based on the following events which occurred near the end of direct examination of the plaintiff by his attorney David Carmichael:

"Q. How many Doctors have you seen in the course of your treatment? A. Dr. Grizzle here in Cheyenne and in Phoenix Dr. Helme, Dr. Fountain was in charge of rehabilitation and Dr. DePaoli performed the operation on me and I believe I went to Denver to see a neurological surgeon. In Denver I believe he was associated with the insurance company."

"MR. LATHROP: I would like to strike the last answer as prejudicial and ask the jury to disregard it."

"THE COURT: Yes."

"MR. LATHROP: Deliberately induced."

"THE COURT: I will instruct the jury to disregard the answer completely. It has no part in this case so pay no attention to it."

"Q. What physical disabilities do you still have? A. I have spastic paralysis on my left side.

"Q. Do you have any pain associated with your condition at the present time? A. It stays at low level if I do keep hot enough. Any time the temperature goes under eighty-five or so I have to put on more and more clothing to stay warm. Stay warm enough I can control it.

"Q. Is that the reason you live in Phoenix? A. Yes, sir."

"MR. LATHROP: May we approach the Bench?"

"THE COURT: Yes."

"(Whereupon, the following proceedings were had out of the hearing of the jury:)"

"MR. LATHROP: The defendant would like to move for a mistrial on the grounds that the plaintiff deliberately interjected into his testimony the term 'insurance' and that this will have a prejudicial effect upon this case which can't be wiped out in the mind of the jurors by simply being instructed to disregard the same."

"MR. CARMICHAEL: I would like to say for the record it wasn't deliberately done. When we went over this section of the testimony I told him if he said anything about it, to say the defendants. I don't know how he got the term 'insurance' but it wasn't deliberately done as far as counsel is concerned and I don't think Mr. Gentry realizes that."

"THE COURT: We will take a recess."

"(Whereupon, the following proceedings were had in Chambers:)"

"(Question and answer read)"

"THE COURT: The Court will reserve ruling on the motion at this time."

Defendants' motion for mistrial was made immediately following the direct examination of plaintiff and before cross-examination. After the close of all evidence and prior to submission of instructions to the jury, the trial court denied the motion for mistrial.

As indicated in the portion of the proceedings set out above, counsel for the plaintiff said he had told the plaintiff, if he said anything about it, to say the defendants. He did not know how plaintiff got the term "insurance" but it was not deliberately done as far as counsel was concerned, and counsel did not think Mr. Gentry "realizes that" [the term was not to be used]. Appellants argue that this explanation by plaintiff's attorney proves the plaintiff deliberately injected a reference to insurance and that such reference was prejudicial to the defendants.

■ By weight of authority, if counsel propounds a question which calls for proper evidence, the fact that an irresponsive or inadvertent answer includes a reference to insurance will not be ground for declaring a mistrial. Annotation 4 A.L.R.2d 761, 784 (§ 12); A.L.R.2d Later Case Service, Vols. 1–6, for § 12, pp. 503–508. See also Zanetti Bus Lines, Inc. v. Hurd, 10 Cir., 320 F.2d 123, 129, and Marken v. Empire Drilling Company, 75 Wyo. 121, 293 P.2d 406, 409.

■ There is authority for the rule that a deliberate injection of insurance coverage into the trial of a damage action presents a basis for a new trial. However, where such testimony slips into the record inadvertently, its admission may be cured by a peremptory order of the trial court striking the same and instructing the jury to disregard it. Kelty v. Best Cabs, Inc., 206 Kan. 654, 481 P.2d 980, 983.

In the trial of the case now before us, opposing counsel immediately moved to strike the answer of the witness in which the words "insurance company" were used, requesting that the jury be instructed to dis-

regard it. The court agreed with opposing counsel and stated:

"I will instruct the jury to disregard the answer completely. It has no part in this case so pay no attention to it."

■ It is quite apparent from the foregoing that the court did all that was required of it to cure any possible prejudice which might otherwise have arisen from the plaintiff's reference to an insurance company. We think no prejudice resulted. Moreover, the court, by denying defendants' motion for a mistrial, will be presumed to have found that the term "insurance" was inadvertently and not deliberately injected into the record. Accordingly, we hold there was no abuse of discretion and we will not disturb the trial court's ruling on the matter.

In connection with appellants' suggestion that the jury was guilty of prejudicial misconduct because consideration was given to defendants' insurance coverage in the deliberations of the jury, two supporting affidavits have been submitted which were made by jurors. They state generally that there was extensive discussion by other jurors of the fact that defendants had insurance.

In rebuttal of these affidavits, appellee has submitted an affidavit of another juror to the effect that mention had been made during discussions that insurance adjusters had been sitting in the courtroom. This affiant claimed the two jurors who made affidavits for appellants related many instances where, according to them, insurance companies had been taken advantage of by persons who pretended injury for the purpose of receiving a much higher award of damages than they were entitled to. The

affiant said a discussion ensued as to whether plaintiff was one of those persons. This juror claims the instructions of the court were then reread, including one to the effect that the jury restrict its consideration to only the facts in evidence. According to him, the matter of insurance was thereafter neither mentioned nor considered by the jurors in arriving at their decision.

The conflicting nature of appellants' affidavits and appellee's affidavit in this particular case demonstrates in and of itself how futile it would be for an appellate court to try to review a verdict by speculating on how the jury arrived at such verdict. More than once this court has said affidavits of jurors in regard to what was said or considered during jury deliberations must be disregarded. York v. North Central Gas Company, 69 Wyo. 98, 237 P.2d 845, 852; Pullman Co. v. Finley, 20 Wyo. 456, 125 P. 380, 386–387; Bunce v. McMahon, 6 Wyo. 24, 42 P. 23, 27–28.

■■ Except where a verdict is arrived at by lot or chance or by other than fair expression of opinion by all jurors, it is generally held that a verdict cannot be impeached by an affidavit of a member of the jury.[1] We find no reason in this case to make an exception to the rule that a juror's affidavit is not admissible to impeach his verdict.

### Expert Testimony

At the trial of this case Richard Crawford, a mechanical engineer and professor at the College of Engineering of the University of Colorado, testified as an expert for the plaintiff. He was asked a hypothetical question pertaining to the speed of the Elite Cleaners truck before brakes were

1. McDonald and United States Fidelity & Guaranty Co. v. Pless, 238 U.S. 264, 267–268, 35 S.Ct. 783, 784, 59 L.Ed. 1300; People ex rel. Department of Public Works v. Donovan, 57 Cal.2d 346, 19 Cal. Rptr. 473, 369 P.2d 1, 3; Noell v. Interstate Motor Lines, Inc., 166 Colo. 494, 444 P.2d 631, 632–633; Dawson v. Eldredge, 84 Idaho 331, 372 P.2d 414, 419; Brown v. Hardin, 197 Kan. 517, 419 P.2d 912, 917–918; Consumers Power Company v. Allegan State Bank, 388 Mich. 568, 202 N.W.2d 295, 297–298; State Highway Commission v. Roth, Mont., 496 P.2d 1136, 1140; State Highway Commission v. Manry, 143 Mont. 382, 390 P.2d 97, 99; Kaltenborn v. Bakerink, 80 Nev. 16, 388 P.2d 572, 575; Horn v. Sturm, Okla., 408 P.2d 541, 546; Carson v. Brauer, 234 Or. 333, 382 P.2d 79, 85–86.

applied and at the point of collision. The question was based upon stipulated facts pertaining to the weight of Gentry and the weight of both the truck and motor scooter and upon testimony of the investigating officer.

This testimony covered the location of impact debris; measurements of brake and skid marks left by different wheels of the truck before and after impact; gouge marks made by the scooter after impact; the distance and direction which the scooter and rider went after impact; and where the truck came to rest. Also, four pictures taken by the investigating officer had been studied by the witness, together with the officer's scaled plat depicting accident details.

█ Appellants claim there was not a proper foundation laid for the opinion of this witness and the question assumed matters not in evidence. The record, it seems to us, does not show that the question assumed matters not in evidence. As to whether a sufficient foundation was laid for the opinion of the expert, in Taylor v. MacDonald, Wyo., 409 P.2d 762, 764, we stated the rule to be, whether qualification of a witness with respect to knowledge or special experience is sufficiently established is a matter resting largely in the discretion of the trial court, whose determination is usually final and will not be disturbed except in extreme cases.

█ In light of what our court held in Culver v. Sekulich, Wyo., 344 P.2d 146, 151–154, we cannot say the trial court in the instant case abused its discretion. For example, it was made clear in *Culver* that it is sufficient if the hypothetical question fairly states facts which the proof tends to establish and which reasonably presents the examiner's claim or theory; and any failure to adhere literally to the evidence is not fatal. As pointed out in the *Culver* opinion, if the adverse party wishes additional facts laid before the witness, he is free to do so on cross-examination.

The opinion of Justice Gray in Krahn v. Pierce, Wyo., 485 P.2d 1021, contains a thorough discussion of when there is or is not a lack of foundation for expert testimony. At 485 P.2d 1026, he indicates, whether in any given case, the expert testimony is necessary to aid the jury in its search for the truth depends upon such a variety of factors readily apparent only to the trial judge that we must depend heavily upon his judgment.

Justice Gray also pointed out that Rule 702 of the Federal Rules of Evidence, which was then being proposed and which will be effective July 1, 1973, will provide:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

█ The record discloses expert witness Crawford has a master's degree in mechanical engineering and has been engaged in his profession for the past 25 years; that he is a full professor at the University of Colorado where for 13 years he was Chairman of the Department of Engineer Design and Economic Valuation; that he has a wide range of industrial experience and was a staff member at M.I.T.; and that in the last 12 years he has conducted over 500 "tests in the stability [and] stopping ability of various vehicles," ranging from motorcycles to loaded semi-tractor trailers. Based upon the foregoing, the trial court ruled that Professor Crawford was qualified as an expert witness. There was no abuse of discretion in such ruling.

### Contributory Negligence

█ Negligence is not to be presumed from the mere happening of an accident. This means we are not to presume the driver of the truck was negligent; we are not to presume the operator of the motor scooter was negligent; and we are not to presume both were negligent.

█ For purposes of this appeal, negligence of the driver of the van is con-

ceded and we are not asked to review that matter. Whether plaintiff was contributorily negligent and whether such negligence was a proximate cause of the accident were matters for the jury to decide; the burden of proof was on the defendants; and the question of contributory negligence is not one of law except in the clearest cases.[2]

In determining whether defendants carried their burden of proof to such an extent that the matter of contributory negligence was not in conflict and was established as a matter of law, we must of course assume the evidence in favor of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it.[3]

As we view the record, Professor Crawford showed himself to be experienced and expert in his field. He demonstrated quite clearly to the jury how his calculations were made from physical facts in the case, according to plaintiff's theory and evidence. He showed, for example, why debris would not be at the true point of impact when vehicles are in motion and impact is above the earth's surface. According to him, however, the true point of impact can be calculated with accuracy from given facts.

Also, the witness demonstrated why and how Gentry and his scooter would take on the speed and direction of the truck, after impact. Undisputed physical facts in the case are that defendants' van was travelling to the north; Gentry on his scooter was travelling to the east; and following impact Gentry and his scooter ended up 54 feet to the northwest of impact debris, with gouge and scrape marks showing on the street's surface in between.

From his given facts, Crawford calculated the scooter's speed was 25 miles per hour *after impact,* with momentum gained from the impact itself. He calculated the speed of defendants' truck to have been 38 miles per hour immediately before application of brakes. Considering reaction time and brake marks, Crawford testified the van was 54.5 feet from the intersection when Martin first observed Gentry.

In today's world, it is a matter of common public knowledge that engineers and scientists can calculate with precise accuracy when a rocket with astronauts will reach the moon and where it will land. Likewise, the time and place of return from the moon can be predicted with the same accuracy.

With such developments in the engineering field, it is not unreasonable for a jury to believe an expert like Crawford could calculate with accuracy the figures he testified to. He apparently convinced the jury of his ability to make such calculations. We are not prepared to dispute any of his testimony; and appellants have not attempted to do so.

The jury had before it a plat, testimony, and pictures from which it could determine how many feet each vehicle travelled in the intersection before impact. It also had evidence as to speed of each vehicle, including the testimony of Crawford. Thus, it could draw its own conclusion as to which vehicle entered the intersection first and how far away the other vehicle was at that time.

We do not pretend to take on the role of the jury; and therefore we decline to talk about precise numbers of feet and the number of feet travelled per second by the re-

2. Borzea v. Anselmi, 71 Wyo. 348, 258 P. 2d 796, 800 and 804; Union Pacific R.R. Co. v. Lumbert, 10 Cir., 401 F.2d 699, 700; Brown v. Riner, Wyo., 500 P.2d 524, 527; German v. Holmes, Wyo., 459 P.2d 367, 367; Fitzsimonds v. Cogswell, Wyo., 405 P.2d 785, 786; Ford Motor Co. v. Arguello, Wyo., 382 P.2d 886, 892; Cederburg v. Carter, Wyo., 448 P.2d 608, 610; McDowall v. Walters, Wyo., 360 P.2d 165, 168, reh. den., Wyo., 361 P.2d 528.

3. Stock v. Roebling, Wyo., 459 P.2d 780, 784; Severin v. Hayes, Wyo., 372 P.2d 1017, 1020; Potts v. Brown, Wyo., 452 P.2d 975, 979.

spective vehicles. It is sufficient to say the evidence was such, with the testimony of Crawford, for the jury to believe Gentry entered the intersection first, with driver Martin at that time a substantial distance from the intersection; and that Gentry had a right to believe the driver of the truck, if he was maintaining a proper lookout and speed, would slow down and not strike plaintiff.

It is in evidence and undisputed that plaintiff's vehicle was a small, slow-moving motor scooter (not a motorcycle) weighing approximately 250 pounds; its maximum speed was 30 to 35 miles per hour; it accelerated very slowly; and it is doubtful if its maximum speed could be reached in a period of two to three blocks.

As stated in Miller v. City of Lander, Wyo., 453 P.2d 889, 893, whether the jury properly weighed the evidence before it in arriving at the right conclusions of fact is not for us to decide. We cannot, of course, substitute our judgment on the facts for the jury's.

In Ries v. Cheyenne Cab & Transfer Co., 53 Wyo. 104, 79 P.2d 468, 472–473, Justice Riner stated, while the ordinance of the City of Cheyenne gives the right of way to vehicles "approaching and being about to enter an intersection" from the right, it clearly does not intend to confer the right regardless of the distances the approaching cars may be from the intersection. He also said the driver of the car not entitled to priority may clearly assume that the other will obey the ordinance as to speed and will not approach at an illegal or excessive speed. Under the facts in that case, as the jury was authorized to find them, Justice Riner said plaintiff might reasonably have presumed that any vehicle approaching the intersection would not exceed the speed limits fixed by the city ordinance and that plaintiff would be able to cross the intersection before any car from another direction reached it.

The case of Fitzsimonds v. Cogswell, Wyo., 405 P.2d 785, 786, involved a collision in an uncontrolled intersection. In that case we said it can be inferred plaintiff saw far enough down the street to take in any vehicle which could enter the intersection before she cleared it, *if travelling within the lawful speed limit*. The trier found in favor of plaintiff in that case and we said, implicit in that finding was the inference that plaintiff exercised ordinary care, *or at least that defendant failed to prove otherwise*.

In Robinson v. Shoumaker, Wyo., 418 P.2d 789, 791–792, we dealt with another intersection collision. In that case the jury's verdict was in favor of defendant, who had a "yield" sign at her entrance to the intersection. We upheld the verdict on the theory that, despite the "yield" sign, the evidence was such that the jury could believe defendant complied with the requirement of the law; and that, due to plaintiff's fault, the caution with which defendant operated her automobile was of no avail. In that case, speed of the other vehicle was a factor.

It is undisputed in the evidence of the case we are dealing with that Gentry received head injuries which caused him to have no recollection of the accident. Therefore, he was unable to testify to facts involved in the accident. On the other hand, the jury was aware that Martin was an interested party who might be inclined to make his testimony favorable to his side of the case.

The jury of course was entitled to discount or disregard those portions of defendants' evidence which it chose not to accept; and according to the appellate rule we have heretofore referred to, we are bound to assume plaintiff's evidence to be true *with every favorable inference which may be reasonably and fairly drawn from it*, disregarding entirely evidence of the defendants.

In view of this, we are unable to say plaintiff was shown to be guilty of contributory negligence as a matter of law. The evidence in that regard, especially with the testimony of Crawford, was in conflict. Therefore, the matter of contributory negligence was for the jury and we will not disturb its findings.

No question has been raised concerning the amount of damages awarded by the jury and nothing else remains in the appeal for us to decide. The judgment of the district court should be affirmed.

Affirmed.