Laura M. Cano SCHERLING, Individually and as personal representative of Louis F. Herrera, Deceased, Donna M. Herrera, Deceased, Gregory Cano, Deceased, and as next friend of Amy Marie Cano, Roseann L. Herrera, Louis E. Herrera, minors, and Leonard K. Herrera, Appellants (Plaintiffs),

v.

Charles Clinton KILGORE and Charles Martin Kilgore, Appellees (Defendants).

No. 5088.

Supreme Court of Wyoming.

Sept. 7, 1979.

Rehearing Denied Oct. 24, 1979.

---

Greg L. Goddard, Buffalo (argued), and Roger D. Bush, Dallas, Tex., for appellants (plaintiffs).

Terry W. Mackey, Cheyenne, signed the brief and appeared in oral argument on behalf of the appellees (defendants).

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

This appeal has as its central issue a question concerning a party's right to jury trial under Rules 38 and 39, W.R.C.P., where demand for jury is untimely made. The district court denied plaintiffs'-appel-

lants' motion for jury trial which was made approximately one year and 75 days after the service of the last pleading. After trial to the court, the district judge made findings of fact and conclusions of law and entered judgment in favor of the defendants-appellees. Several questions are also raised concerning the sufficiency of the evidence to sustain the findings of the trial court. We will affirm.

The original complaint was filed by the plaintiffs-appellants on June 25, 1975, seeking damages arising out of a tragic automobile collision that occurred on August 17, 1974, six miles south of Torrington, Wyoming. The defendants-appellees named in the complaint were Charles Martin Kilgore (Dr. Kilgore) and his son Charles Clinton Kilgore (Charles). According to the complaint, Charles was allegedly driving a 1966 pickup owned by and entrusted to him for use by Dr. Kilgore. The pertinent findings of fact made by the trial court were:
" * * *

"10. Between 5:05 and 5:35 P.M. on August 17, 1974, the 1970 Rambler and the 1966 GMC pickup collided in the southbound lane of U.S. Highway 85 killing Louis F. Herrera, Donna M. Herrera and Gregory Cano, and injuring Roseann L. Herrera and Amy Cano, occupants of the 1970 Rambler; and killing Grant Edward Clark and Bruce Allen Stovall, and injuring Charles Clinton Kilgore, occupants of the 1966 GMC pickup.

"11. That prior to the time of the collision the occupants of the 1966 GMC pickup had consumed alcoholic beverages and shortly after the collision blood samples were taken and the blood alcohol content of each of the occupants of the GMC pickup were determined to be:

Charles Clinton Kilgore, 0.19%
Grant Edward Clark, 0.11%
Bruce Allen Stovall, 0.09%

"12. At the time of the collision Louis F. Herrera was operating the 1970 Rambler in a lawful manner.

"13. At a point south of the collision, just north of the railroad tracks near Silvertip at the Yoder intersection of

Highway 85, around 5:00 o'clock P.M., witnesses observed the 1966 GMC pickup proceeding in a northerly direction on Highway 85 occupied by three young men. The passenger in the middle of the cab of the pickup truck was identified by said witnesses as being Charles Clinton Kilgore.

"14. That prior to the collision the defendant, Charles Clinton Kilgore, and his companions Bruce Allen Stovall and Grant Edward Clark came to the Yoder bar at approximately 4:30 P.M. and were served beer by Yvonne Hirst and her husband, who saw them leave shortly after 5:00 P.M. Mrs. Hirst testified at trial that the defendant entered the GMC pickup truck at the driver's side; however, in an earlier statement the same witness identified the defendant as dark haired and wearing a dark red plaid long-sleeved shirt with bib overalls. The defendant is fair-haired and other witnesses testified at trial that defendant was wearing a grey tee shirt.

"15. That Twila Splinter of Yoder, Wyoming, testified that the middle passenger of the GMC pickup had blond hair when the pickup passed her.

"16. On or about December 1, 1973, Charles Clinton Kilgore had been convicted of driving while under the influence of intoxicants.

"17. The defendant, Charles Martin Kilgore, was not aware of such conviction at the time he permitted his son, defendant Charles Clinton Kilgore, to use the vehicle prior to the collision.

"18. The defendant, Charles Martin Kilgore, was not negligent in entrusting the 1966 GMC pickup to Charles Clinton Kilgore.

"19. That just prior to the collision the GMC pickup was operated on the wrong side of the road.
" * * *"

Based upon these facts and the supporting evidence, the district court concluded in pertinent part as a matter of law that:

"1. Charles Martin Kilgore was the owner of a 1966 GMC pickup involved in a

collision with a 1970 Rambler on August 17, 1974, approximately six and one half miles south of Torrington, Wyoming, in Goshen County.

"2. The 1966 GMC pickup was occupied by Charles Clinton Kilgore, Grant Edward Clark and Bruce Allen Stoval [sic] at the time of the collision.

"3. The 1970 Rambler was occupied by Louis F. Herrera, Donna M. Herrera, Roseann L. Herrera, Amy Cano and Gregory Cano at the time of the collision.

"4. That prior to and at the time of the collision, Louis F. Herrera was operating the 1970 Rambler in a lawful and non-negligent manner.

"5. At the time of the collision and just prior thereto the 1966 GMC pickup was operated in a negligent manner.

"6. The negligence of the driver of the 1966 GMC pickup was the proximate cause of the collision which collision occurred as a result of negligence and such negligence was the cause of the injuries and damages sustained by the plaintiffs. The driver of the 1966 GMC pickup was not identified by the evidence.

"7. Charles Martin Kilgore did not negligently entrust the 1966 GMC pickup to Charles Clinton Kilgore.

\*　\*　\*　\*　\*　\*

"9. The plaintiffs are not entitled to punitive damages against the named defendants or either of them, there being insufficient evidence to show gross negligence, recklessness and wilful and wanton disregard of the consequences and safety of others.

"\*　\*　\*"

After the appellants had filed their original twelve-page complaint, the parties stipulated that appellees had until July 30, 1975, to answer the complaint. On July 30, 1975, appellees filed a motion to dismiss.

On September 7, 1976, a decision letter denying the motion to dismiss was filed, followed by an order to that effect entered September 27, 1976.

Appellees' answers were filed on September 10, 1976, (Dr. Kilgore) and September 22, 1976, (Charles). A pretrial conference was set for December 8, 1977. Appellants submitted interrogatories to appellees in late November, 1977.[1]

On December 5, 1977, appellants submitted a jury demand. Appellees moved to strike their demand. Appellants submitted another motion asking for jury trial pursuant to Rule 39(a), W.R.C.P. on December 8, 1977. At the pretrial conference, the district court denied the request for jury trial. The case was set for trial and heard on May 30, 1978, by the court sitting without a jury.

The appellant raises as issues:

(1) The trial court erred in denying appellants' motion for jury trial because it was timely in view of certain amended pleadings of both appellants and appellees, the case at bar was consolidated with two other cases for trial, the motion was unopposed and the trial court did not consider or rule on the motion.

(2) The district court abused its discretion in not granting the motion for jury trial pursuant to Rule 39(b), W.R.C.P. because of the complexities of the case and it was well-suited for trial by jury. Coupled with this was a failure by the court reporter to record the proceedings regarding denial of the motion.

(3) The court applied an erroneous legal test to the appellants' theory of negligent entrustment.

(4) The court's findings with regard to certain factual matters were contrary to the great weight of evidence.

(5) There is no evidence to support certain factual findings and the judgment of the court.

---

1. The author of the appellants' brief refers several times to apparent delays as being "inexplicable." Appellees sought and were granted a protective order which delayed the proceedings a considerable amount of time. The protective order was granted because Charles faced five counts of negligent homicide as a result of the occurrence. Appellants never complained about the delays. Indeed, the protective order was not lifted until at the pretrial conference where appellees called the court's attention to the fact that it had not been vacated, though the reason for its continuance no longer existed.

Appellants' assertion that the district court erred in denying their motion for a jury trial is grounded in a belief that even if the failure to make a proper jury demand had effected a waiver of the right to trial by jury, appellee Dr. Kilgore's amendment of his pleadings at the pretrial conference and the consolidation of two other cases arising out of the same incident with that of the appellants, operated to revive the right to demand a trial by jury. While in theory appellant is at least partly correct in his discussion of the governing rules of procedure and case law, the record in the trial court simply does not support their application. Rule 38, W.R.C.P., governs the analysis of this case. Rule 38(a) states:

"(a) * * * [I]ssues of fact arising in actions for the recovery of money only * * * shall be tried by a jury unless a jury trial be waived, * * *."

Rule 38(b) provides:

"(b) *Demand*

"(1) By Whom.—Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and *not later than 10 days after service of the last pleading directed to such issue.* * * *" (Emphasis added.)

And, most important to the case at bar, Rule 38(d) declares:

"(d) *Waiver.*—The *failure* of a party *to serve a demand* as required by this rule and to file it as required by Rule 5(d) *constitutes a waiver* by him of trial by jury. * * *" (Emphasis added.)

■ As we view this record the answers of the two appellees were filed on September 10, 1976 and September 22, 1976. The demand for jury trial was not made until December 5, 1977, and was supplemented with a second related motion on December 8, 1977. These demands were clearly untimely, even though the trial judge granted, at the pretrial conference, appellees' motion to amend their pleadings by the addition of several defenses. However, no amendments were actually made, nor does it appear that the case was defended upon the proposed amendments.

The general rules with regard to jury demands are:

"* * * *

"If the only pleadings in the case are the complaint and the answer, the demand for jury trial must be served not later than ten days after service of the answer. It is proper to serve the demand prior to answer. Indeed plaintiff will frequently demand jury trial with the filing of his complaint. *If there are multiple defendants, the time each defendant files his answer starts the ten-day period running for the issues raised between him and the plaintiff but on an issue in which all the defendants are interested the time runs from service of the last answer.*

* * * * * *

*"The same principle applies to amended and supplemental pleadings. Demand may be made within ten days after service of the amended or supplemental pleading for new issues raised by that pleading but the amendment does not revive a right, previously waived, to demand jury trial on the issues already framed by the original pleadings. Nor does the late demand create a right to jury trial on issues raised by the amended or supplemental pleadings if those issues were fairly raised by the original pleadings.*

"There are some comparatively early cases holding that if the original complaint stated a complaint that was wholly equitable and an amended complaint sought instead legal relief, a demand for jury trial at the time of the amended complaint was timely. The theory was that plaintiff could not properly have demanded a jury when he was stating the equitable claim and that he did not 'by nonaction, waive a right when there is no basis for choice * * *'

"Despite the seeming logic of this position, the better analysis is to the contrary. The party is claiming all along that one set of circumstances entitles him to help from the court. If these circum-

stances give rise to any issue on which the Constitution guarantees jury trial, the party should have demanded a jury trial at the outset and should not be able to regain the right previously waived. This was the view taken by the former Advisory Committee on Civil Rules in 1954, when it proposed to amend Rule 38(d) by adding the following sentence:

"*A waiver of trial by jury is not revoked by an amendment of a pleading asserting only a claim or defense arising out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.*

"The proposed amendment was not included in the final report of the committee in 1955, quite possibly because the amendment seemed unnecessary, and thus was never adopted in the federal system. In fairness, it should be said that there seemed more justification for the holdings that have just been criticized at the time they came down than can be said for them from the vantage point of the present. The cases typically were suits for patent infringement, in which the plaintiff originally asked for an injunction and damages and later amended to seek damages only. At that time it was thought that a claim for an injunction and damages was wholly equitable and that the court could assess damages as incidental to the claim for an injunction. Thus it was not possible at that time to plead both an equitable claim for an injunction and a legal claim for damages. That old view has been thoroughly repudiated and it is now clear that a claim for damages—or for 'profits'—is legal even though it is joined with the claim for an injunction. *This means that today an action of the sort described would have issues triable of right to a jury from the beginning and failure to*

*demand jury trial at the outset would be an irrevocable waiver.*

"The testing case today would be if the complaint sought purely equitable relief and an amended complaint sought only legal relief. *Since the parties are on notice from the beginning of the possibility of legal relief being granted, it should be held that their failure to demand a jury at the outset is a waiver and that the amendment does not create a new opportunity to demand a jury.*" (Emphasis added and footnotes omitted.) 9 Wright and Miller, Federal Practice and Procedure: Civil § 2320, pp. 92–100; See 5 Moore's Federal Practice, ¶ 38.43.

While appellants here make a far-reaching attack on the denial of their demand for jury trial by the district court, their efforts in the trial court were considerably more abbreviated. The record reflects little more than that a demand for a jury trial was made. If in fact more than that took place in the trial court, it does not appear in this record. Appellants must bear the responsibility for that failure. It is properly an appellant's burden to bring us a complete record on which to base a decision. *Atkins v. Household Finance Corp. of Casper*, Wyo.1978, 581 P.2d 193; *Matter of Reed's Estate*, Wyo.1977, 566 P.2d 587; *Nix v. Chambers*, Wyo.1974, 524 P.2d 589; *Wydisco, Inc. v. McMahon*, Wyo.1974, 520 P.2d 218.[2] On the basis of this record we cannot even approach most of the matters suggested to us by appellants.

The appellants submitted a motion demanding a jury on December 5, 1977. This is not only more than ten days after the last pleading (the answer filed on September 22, 1976), it is almost one year and 75 days after that pleading was served. The failure to demand a jury within the ten-day time frame operates as a waiver.

---

2. Appellants claim that the court reporter "erroneously" failed to report the arguments of counsel and that this alone should be grounds for reversal. We know of no authority for this proposition. The record contains the notation that arguments were heard on the jury-demand motion but not reported. If appellants wanted them reported, it was their responsibility to see

to it. Moreover, if there was something in those proceedings which appellants deemed crucial to their case, they had available to them Rule 4.03, Wyoming Rules of Appellate Procedure (under the old Rules, Rules 75(c) and (d), Wyoming Rules of Civil Procedure), designed to reconstruct unreported proceedings into written form for our examination.

Rule 38(d), W.R.C.P. At the time appellants demanded a jury trial, they had waived that right. Appellants assert that the consolidation of two other cases[3] and the amended defenses which were added at trial operated to relieve them of their waiver.[4] It is abundantly clear that no such issue was addressed to the district court. We will not consider matters raised for the first time on appeal unless they go to jurisdiction or are otherwise of such a fundamental nature that the court must take cognizance of them.[5] *Schaefer v. Lampert Lumber Co.*, Wyo.1979, 591 P.2d 1225, 1227.

▆ In this appeal appellants assert that it was an abuse of discretion for the trial court not to have relieved them of their waiver under Rule 39(b), W.R.C.P.:

> "39(b) *By the court.* Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues."

Absolutely no mention was ever made in the trial court of Rule 39(b) and there is, in addition, nothing from which we could discern an intention on the part of appellants to seek relief from the trial judge under Rule 39(b). In the caption on the December 8, 1977 motion demanding a jury, Rule 39(a) is included. Rule 39(a) simply relates to procedures to be followed *when and if* a proper demand has been made under Rule 38. No proper demand had been made under Rule 38 and so Rule 39(a) had no real significance. Not only was no mention made of Rule 39(b), but the record does not contain so much as a word relating to the basis on which appellants might have sought relief under Rule 39(b):

3. The other cases were settled before trial.

4. Appellants also suggested the demand for jury was unopposed and therefore should have been granted. The record shows that both appellees resisted the demands by motion to strike the jury demand.

5. Although we do not decide the question since it was not preserved for appeal, we note that

" * * * Counsel desirous of obtaining relief from waiver should be careful to spell out the basis or bases of his motion for relief, since it is settled today that the mere statement of 'oversight' or 'inadvertence' does not suffice to invoke the discretion of the court. * * * " 5 Moore's Federal Practice, ¶ 39.09, pp. 722–723. See generally, Annot., 6 A.L.R. Fed. 217 (1971).

Since no issue was raised in the district court regarding relief from waiver under Rule 39(b), we will not consider it further. *Schaefer v. Lampert Lumber Co.*, supra.

▆ Appellants grouped their final three arguments into one and captioned it, "Combined Argument and Authorities Thereunder." The arguments essentially boil down to these:

(1) The district court applied an erroneous legal test to appellants' theory of negligent entrustment because the district court found that there was no negligent entrustment even though the great weight of evidence showed that Dr. Kilgore should have known about Charles' poor driving record and tendency to intemperance and, nevertheless, entrusted him with an automobile without restrictions or control.

(2) The district court's findings are erroneous and contrary to the great weight of evidence in that he found: (a) Charles was not the driver of the pickup; (b) that Charles was not in vicarious control of the vehicle or engaged in a joint venture with his passengers no matter who the actual driver was; (c) that Dr. Kilgore had no legal duty to prevent his son from using the vehicle in a dangerous manner; and (d) that Dr. Kilgore was not liable for

the amendments (additional defenses) and the consolidation would, in any case, probably not have revived the waived right to a jury trial. 9 Wright and Miller, Federal Practice and Procedure: Civil § 2320; 5 Moore's Federal Practice, ¶ 38.39[2], pp. 320–321. See Annot., "Revival of Waived Right to Jury," 18 A.L.R.Fed. 754 (1974).

Charles' conduct even if Charles had allowed someone else to drive.

(3) As a general matter, there is insufficient evidence to support the judgment and reasonable minds could not differ that the evidence demonstrated that either Dr. Kilgore or Charles, or both, were negligent in causing the deaths and injuries to these appellants.[6]

Appellants cited no pertinent authority nor did they make a cogent argument in behalf of any of these arguments. Rather they incorporated by reference trial briefs contained in the record.

■ This court's warning in *Budd v. Bishop*, Wyo.1975, 543 P.2d 368, was clear: "We note that in the brief which was filed in this Court, Budd, to support some of these grounds, adopted by reference arguments and authorities cited in his trial brief. This technique is not an appropriate way to comply with Rule 12 [7] of the rules of this Court, and although we have noticed those matters in this case, we make clear that, since only one copy of trial briefs is encompassed within a record, *the Court normally would refuse to notice matters not properly presented by the filing of six briefs* in accordance with our rules." 543 P.2d 371. (Emphasis added.)

With respect to their theory of vicarious control whereby Charles should be held liable even if one of the other passengers was driving, appellant merely states, " * * * Appellants [sic] case was established under any number of theories, all of which were within the scope of their pleading or allowable variance therefrom." This is followed by a string of citations. It is the duty of counsel to isolate and explain any theory relied upon.

■ Moreover, where an appellant asserts error but cites no authority and makes only a perfunctory argument in support of the contention, this court will not consider the contention. *Reed v. Wadsworth*, Wyo. 1976, 553 P.2d 1024, 1033; *Clouser v. Spaniol Ford, Inc.*, Wyo.1974, 522 P.2d 1360, 1365; *Joly v. Safeway Stores, Inc.*, Wyo. 1972, 502 P.2d 362, 365. A sufficiency-of-the-evidence claim, where findings of a trial court are attacked, is not immune from these rules. A general attack amounting only to a statement that a trial court's findings are wrong and those proposed by appellants are correct is a violation of the rule requiring proper submission of briefs and the requirement that alleged errors be supported by authority *and* cogent argument. *Giovannini v. Turrietta*, 1966, 76 N.M. 344, 414 P.2d 855, 856–857; and see generally, West's Digest System, Appeal and Error, ■

■ In any event it is abundantly clear that appellants simply failed in their essential burden of proof and was unable, to the court's satisfaction, by a preponderance of the evidence to prove that the appellee Kilgore was driving the guilty vehicle or that any particular occupant was at the wheel. *Tench v. Weaver*, Wyo.1962, 374 P.2d 27. The phrase, "preponderance of the evidence," has been given various definitions by different courts but, according to McCormick et al. on Evidence 2nd Ed. H.B., § 339, p. 794, the most acceptable meaning seems to be proof which leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence. Here, the appellants failed to persuade the trier of fact that the appellant Kilgore was driving or which other of the

---

**6.** We view these issues as raising questions regarding the sufficiency of the evidence. We cannot substitute our judgment for that of the trial court, and the findings of the trial court must be sustained unless clearly erroneous or contrary to the great weight of evidence. *Diamond Management Corp. v. Empire Gas Corp.*, Wyo.1979, 594 P.2d 964; *Kvenild v. Taylor [Lavoie]*, Wyo.1979, 594 P.2d 972; *True v. Hi-Plains Elevator Machinery*, Wyo.1978, 577 P.2d 991. Although we do not decide the questions

of sufficiency of the evidence because of our disposition, it is clear that the matters suggested by appellants are nothing more than conflicts in the evidence which the trial court resolved against them. See, *Reed v. Wadsworth*, Wyo.1976, 553 P.2d 1024, 1037.

**7.** The rules governing submission of briefs are now embodied in the Wyoming Rules of Appellate Procedure, Rule 5.01.

occupants was driving. While it may appear distressing that the evidence was in such a state that the trial judge could not place a finger on the negligent one, he should not be forced to do so if he has not been persuaded to the extent he must be. To do so would defile the law of evidence.

Affirmed.