Richard C. FERRIS and Betty J. Ferris, Appellants (Plaintiffs),

v.

Catherine Ann MYERS, Appellee (Defendant).

No. 5344.

Supreme Court of Wyoming.

March 12, 1981.

Robert P. Schuster of Spence, Moriarity & Schuster, Jackson, for appellants.

W. W. Reeves of Vlastos & Reeves, Casper, for appellee.

Before ROSE, C. J.*, McCLINTOCK, RAPER **, THOMAS and ROONEY, JJ.

RAPER, Justice.

This appeal arises out of a tort action initiated in the district court by appellants against appellee seeking damages resulting from an automobile collision on Togwotee Pass. The case was tried to a jury which, on May 8, 1980, returned a verdict finding the appellee 100% at fault and awarding $2,090.00 to appellant Richard C. Ferris and $365.00 to appellant Betty J. Ferris. Judgment was accordingly entered by the trial judge on May 23, 1980. A motion for new trial was made by appellants and denied.

Appellants present two issues[1] for review:

"1. Did the trial court commit prejudicial error in refusing to allow plaintiffs-

* Chief Justice since January 5, 1981.

** Chief Justice at time of oral argument.

1. Appellee reframes the issues to be:
"1. Whether the trial court abused its discretion by refusing to allow plaintiffs'/appellants' reconstruction witness to testify concerning the speed of a vehicle in a separate accident, when such refusal was based on grounds of inadequate foundation, and whether prejudicial error resulted.
"This is the first issue raised by appellants. Appellee suggests that there are the following issues related to it:

"(a) Whether appellants withdrew the suggested testimony.
"(b) Whether there was a sufficient offer of proof.
"2. Whether the jury's verdict was consistent with the law and the evidence.
"This is, in substance, the second issue raised by the appellants. Appellee believes that, before that issue is approached, the Court must decide whether appellants have waived any objection to the verdict because no question was raised about the claimed irregularity prior to the discharge of the jury."

appellants' accident reconstruction expert to testify concerning the speed of a vehicle when such refusal was based on grounds of inadequate foundation?

"2. Was the verdict rendered by the jury inadequate as a matter of law?"

We will affirm.

## I

Since there is no dispute in this appeal as to the 100% fault of appellee, very little needs to be said by way of background to set the automobile collision scene. On February 12, 1976, at about 10:30 p. m. appellee was driving from college in Billings, Montana to Jackson. As she approached a curve on Togwotee Pass at a higher-than-safe rate of speed for the snowpacked condition of the road, she lost control of her vehicle. It went out of her lane of travel and into the lane of travel of appellants' vehicle being driven by appellant Mr. Ferris with his wife, Mrs. Ferris, as a passenger in the front seat. The appellants were traveling from Jackson to their home outside of Dubois. The vehicles collided, appellee's vehicle striking the door of the appellants' vehicle next to which Mrs. Ferris was sitting. The predominant issues during the trial went to damages, and they are the issues at the bottom of this appeal. Other facts necessary to an understanding of this opinion will be developed in our consideration of the issues.

## II

The first issue [2] arose during the course of the trial when some counsel apparently had mentioned in an opening statement [3] something about a Utah automobile collision occurrence in which appellants were involved on October 2, 1976. The Utah incident first came into evidence when Mr. Ferris was interrogated about it by his counsel during appellants' case in chief. It

was a rear ender into appellants' vehicle by another car. Two photographs of the damage to appellants' car were received in evidence. Repair costs were $1,100–$1,300.

Appellants called as an expert witness an accident reconstruction engineer whom appellants' counsel attempted to interrogate about the Utah collision. Considerable testimony by the expert about the Togwotee Pass collision was allowed in evidence by the trial judge. Appellee's counsel interrupted the interrogation about the Utah collision, requested and was granted leave by the trial judge to voir dire:

"BY MR. REEVES:

"Q. Have you seen any pictures of the car that ran into this?

"A. No, sir.

"Q. Do you know the length of skid marks left by either vehicle?

"A. No. I don't feel I need to.

"Q. I'm sure you don't feel you need to, but please just answer the question.

"Do you know the length of skid marks of the vehicle that ran into this? Yes or no.

"A. No. I don't specifically, no.

"Q. Do you know the damage to the front end of this vehicle?

"A. Yes.

"Q. Have you seen any photographs of it?

"A. I haven't seen any photographs of it.

"Q. What's your source of knowledge?

"A. Testimony that has been given.

"Q. Anything else?

"A. Yes. I believe I have seen a repair estimate.

"Q. Do you know the damage to the Volkswagon that was in front of this vehicle?

---

2. The importance of this issue rests in the fact that appellee's position is that appellant Mrs. Ferris' injuries and damages claimed in this suit arose out of a Utah collision in which Mrs. Ferris was involved, along with other circumstances unrelated to the collision for which appellee is being sued in this case.

3. This court was not given the benefit of opening statements taken down but not transcribed and placed in the record.

"A. I know each one of those from the Officer's indication of dollar value.

"Q. On the highway report from Utah?

"A. When I talked to him about this accident I—

"Q. Did you talk to the Officer in Utah about this accident?

"A. Yes.

"Q. When did you do that?

"A. Approximately a week ago.

"Q. Okay. Do you have any other source of knowledge? You talked to the Officer in Utah, you heard Mr. Ferris testify, and you have seen the Officer's estimate of damage.

"A. Diagram.

"Q. Does his diagram have anything to do with this?

"A. Oh, yes.

"Q. What, on his diagram, is figured into your equasion? [sic]⁴

"A. Well, I know—

"Q. Please. What, on his diagram, is figured into your equasion? Give us a number to put into your equasion.

"A. Nothing on the diagram. I think those pictures—

"Q. Well, Mr. Crawford—

"A. May I finish?

"Q. Yes. Go ahead.

"A. I think those pictures clearly indicate—

"Q. You're not answering my question. I won't interrupt if you answer my question. I asked you: What, on the Officer's diagram, gives you a number to put in this equasion? And you said nothing.

"A. Not on the diagram.

"Q. That's where we are. I'll ask you another question. I know there's a lot of things you want to say, but, please, answer my question.

"Is there anything in what the Officer in Utah told you over the phone that gives you a number to put into your equasion? Yes or no.

"A. No. I don't think there's anything he told me on the phone.

"Q. Please. Yes or no.

"A. No.

"Q. 'No' is the answer?

"A. No.

"Q. What you're doing, you're making a mathematical equasion. It's just like 2 and 2 is 4, but it's more complicated than that?

"A. May I answer that?

"Q. Yes.

"A. No.

"Q. Do you add non-mathematical—that is, non-engineering factors to your equasion?

"A. No. I know what the back of that vehicle will withstand. I know when the damage occurs.

"Q. Excuse me—

"A. I'm trying to answer your question.

"MR. SCHUSTER: Your Honor, if you please, may I attempt to lay the foundation for this and proceed with the examination?

"THE COURT: Go ahead, Mr. Reeves.

"Q. (By Mr. Reeves) Thank you. You take from these photographs a certain factor that you put into a mathematical equasion, hit the buttons on your computer and it says 20 miles an hour or 60 miles an hour. That's what you do, isn't it?

"A. I think you have to use some judgment. You have to know what the vehicle is made of. You have to know a lot of things.

"Q. Yes, but it's those things that give you the numbers to put into your equasion?

"A. Certainly, I do run these into the calculator.

"Q. And you use your judgment in getting the numbers to put in the equasion.

---

4. The word "equation" is uniformly misspelled by the court reporter, so it will not be further bracketed but has been observed.

"Now, did you use any estimates of damage to the car that was in front of this car to get numbers to put into your equasion?

"A. I didn't think that was relevant. What I wanted to know—

"Q. Please. Yes or no.

"A. No.

"Q. I know you want to tell me what's relevant, but I'll do my best.

"Did you get any numbers to put into your equasion from the statements of Mr. or Mrs. Ferris? Did they tell you anything that you converted into numbers?

"A. No.

"Q. What's in your equasion? Only this damage?

"A. Yes.

"Q. Or did you make a mathematical equasion?

"A. I don't think I have to.

"Q. There's nothing times anything because you don't know the other parts of the equasion because you don't have the other facts, do you?

"A. That's incorrect.

"Q. You made no—you're going to make a judgment without any mathematical assistance about speed of the car that ran into this one?

"A. Knowing the structure of that; knowing that's a 5 mile an hour bumper.

"Q. That's what you're going to do, isn't it?

"A. That's correct.

"MR. REEVES: Okay. I object. There is no foundation because the other critical factors involved in arriving at an equasion speed judgment are not present.

"THE COURT: At the present time the objection is sustained, and it's lunch time and the jury will go to lunch while Mr. Schuster makes an offer of proof.

"MR. SCHUSTER: I'm not going to make an offer of proof after all that. I'm done with it.

"THE COURT: You are?

"MR. SCHUSTER: You bet.

"THE COURT: Okay. Then we will be in recess until 2:00 o'clock. We will have lunch.

"Remember the admonitions I originally gave you with respect to this case.

"Thank you. You may step down. I want to put something on the record after the jury leaves.

"(Jury leaves courtroom)

"THE COURT: Let the record show the Court has in its hand a certified copy of the guilty plea from this accident by the defendant on February 26, 1976, showing she was fined $20 with $5 court costs, and it's signed by R. E. Steward [sic]. I know R. E. Stewart [sic] very well. I know he was in fact the Justice of the Peace at that time. I know his signature. And that's what this purports to be. And I do that to reinforce my earlier ruling with respect to this matter in chambers.

"Is there anything else?

"MR. REEVES: I have nothing to say.

"THE COURT: Okay."

Later the witness voluntarily slipped into his testimony that the vehicle striking the rear of appellants' vehicle in the Utah collision was going less than eight miles per hour though the court had sustained appellee counsel's objection that no adequate foundation had been laid. Appellee's counsel vigorously protested, objected and moved that the statement be stricken and the jury appropriately instructed to disregard. The trial judge again sustained the objection and instructed the jury to disregard the volunteered answer. Counsel for appellants again tried to qualify the witness even though the witness had little information. Once again following voir dire by appellee's counsel and an objection that no proper foundation had been laid, the trial judge refused to admit evidence of the speed of the vehicle which ran into the rear of appellants' vehicle at the time of the Utah collision. No offer of proof was made by appellants' counsel.

It is apparent from the transcript of testimony that the accident reconstruction ex-

pert did not know enough about the Utah collision which had occurred over three years earlier to arrive at any sound opinion even though he claimed he could. He listened to the testimony of Mr. Ferris who testified that they were hit from the rear and pushed into a car ahead, repair estimates were $1,100–$1,300. The bumper of the car behind did not match, it being a Volkswagen, so that the force was directed underneath appellants' bumper. The expert had a pair of photographs showing the rear-end damage to appellants' car only. He had talked a week before the trial on the telephone with the officer who had investigated the accident and had a diagram from the officer's report.

The expert did not know many other necessary ingredients to a valid conclusion as to the speed of the vehicle which struck appellants' car from the rear: the distance appellants' car was moved forward, except "not very far"; the extent of damages to the other vehicles involved, arrived at by examination; the dimensions and characteristics of skid marks; and any underneath damage to such parts as the frame, the drive train (differential, drive shaft, transmission, motor).

■ While Rule 702, W.R.E.[5] permits use of experts, this does not mean that the trial judge is required to let into evidence just any opinion under the cloak of it coming from a person learned in his field. Before an expert voices his opinion, it is good practice to voir dire as was done here to avoid a premature expression which might influence the jury, particularly in light of a suspected absence of adequate basis. This procedure is under the supervision of the

trial court in his authority to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to make the interrogation effective for the ascertainment of the truth. Rule 611(a), W.R.E.[6] Whether the qualification of a witness with respect to his knowledge or special experience is sufficiently established is a matter resting largely in the discretion of the trial judge and his determination is usually final and will not be disturbed except in extreme cases. *Elite Cleaners and Tailors, Inc. v. Gentry*, Wyo. 1973, 510 P.2d 784[7]; *Taylor v. MacDonald*, Wyo.1966, 409 P.2d 762.

■ This court in *Krahn v. Pierce*, Wyo. 1971, 485 P.2d 1021, discussed proposed Rule 702, F.R.E., not yet then in effect in federal jurisprudence but which has of course since been adopted not only as a federal rule but also as Rule 702, W.R.E. (fn. 5). It was pointed out in *Krahn* that it was not the purpose of the rule to let down the bars concerning expert testimony and the rule prevails that a trial judge may still exclude testimony which is not helpful to the trier of facts. The court pointed out that this assurance protects against expert testimony which would merely tell the jury what result to reach. The court still has discretion to reject such testimony. If there is no proper foundation laid, then expert testimony does not "assist" the jury in the search for truth. We strongly agree with the trial judge's ruling excluding the expert's testimony about the Utah accident on the ground of inadequate foundation and hold there was no error.[8]

We need not discuss appellee's sub-issues to the first issue because our holding to this

---

5. Rule 702, W.R.E.:

   "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

6. Rule 611(a), W.R.E.:

   "(a) *Control by court.*—The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the as-

certainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

7. Coincidentally, the same expert testified in *Elite Cleaners* as in the case now before us. However, there, the proper basic information upon which to form an opinion was present.

8. There are cases supporting such a view in the face of such scanty information upon which to base an opinion. See Annotation, "Expert or opinion evidence as to speed based on appearance or condition of motor vehicle after acci-

point disposes of the question. However, we feel some comment is necessary with respect to the improper conduct of an expert with considerable court experience to attempt to sneak in an opinion. We observe that the court's admonition was well taken. When the trial judge is required to instruct the jury to disregard such volunteered testimony, the expert loses some credibility. Counsel may have abandoned the usefulness of the expert at that point and for that reason made no formal offer of proof. We would observe, however, that no offer of proof was necessary in that the expert did state what he was trying to prove so that it can and would fall under Rule 103(a)(2), W.R.E.[9] where it was apparent to the court from the questions and improper answer, the substance of the excluded testimony.

## III

The second and last issue as set out by appellants is whether the verdict rendered by the jury was inadequate as a matter of law or, as stated by the appellee, whether the jury's verdict was consistent with the law and evidence. It has been said so often that it hardly bears repetition that an appellate court places great weight on a jury's verdict and its determination of the amount of damages is inviolate absent an award which is so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, or other improper cause has invaded the trial. *Brittain v. Booth*, Wyo.1979, 601 P.2d 532. We must couple that rule with one even more often repeated by this court that we must assume the evidence in favor of the prevailing party as true and leave out of consideration the evidence in conflict therewith, giving the evidence of the prevailing party every favorable inference which may be reasonably and fairly drawn from it; we do not evaluate evidence, rather we only determine whether there was substantial evidence upon which the jury

---

dent," 93 A.L.R.2d 287, 288, § 2[a], where it was said:

"It is difficult to formulate any general rule as to the admissibility or inadmissibility of opinion evidence as to speed based upon the condition of a motor vehicle after an accident, because in most of the cases where the evidence was proffered it was purportedly based on other considerations as well, frequently being offered as having been drawn from a consideration of the entire complex of conditions existing after the accident, including marks on the road, and the position of the vehicles as well as their condition. In addition, the courts have seldom attacked the question in any detail, and it is frequently impossible to determine from the opinion of the court whether the testimony was being rejected as a matter of principle or only as being inadequate in the light of the facts of the particular case. In any event, it may be said that in a large number of cases in which opinion evidence as to speed was offered, based at least in part on a witness' observation of the condition of the motor vehicles after the accident, the testimony was held inadmissible."

See also *Levine v. Remolif*, 1964, 80 Nev. 168, 390 P.2d 718 where it was held that any attempt to arrive at speed based on photographs and speculation with any degree of accuracy was properly rejected as incredible. See also *Carrizoza v. Zahn*, 1973, 21 Ariz.App. 94, 515 P.2d 1192. The discussion in 3 Louisell and

Mueller, Federal Evidence, of Rule 703 F.R.E. [W.R.E] is of interest where at page 652 it is made clear:

"Underlying Rule 703 is the idea, sensible in itself, that an expert is likely to understand better than a court the quality and nature of data essential to support an opinion in his own field. Yet Rule 703 does not abdicate judicial responsibility to the expert, for it leaves room for rejection of testimony if reliance on the facts or data is unreasonable: The Rule in effect directs the trial judge to accord deference to the expert's explanation of what is reasonable, but it does not require the trial judge to accept what amounts to wishful thinking, guesswork, or speculation. And it is of course true that the judge may require that the foundation first be laid pursuant to Rule 705 * * *." (Footnote omitted.)

9. Rule 103(a)(2), W.R.E.:

"(a) *Effect of erroneous ruling.*—Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

\* \* \* \* \* \*

(2) Offer of Proof.—In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer *or was apparent from the context within which questions were asked.*" (Emphasis added.)

could arrive at its decision if it believed the evidence in favor of the prevailing party. *Brittain v. Booth,* supra. We cannot look at just the small amount of a verdict and conclude that because it is such a pittance that we must as a matter of law presume that bias and prejudice was present. It may have been all that the recovering party or parties deserved.

We cannot perform the function of a jury, otherwise we would be invading its province. We can and must on the other hand examine the evidence before the jury to determine whether it justifies the jury's verdict. The appellants appear to believe that since appellee was proved to be at fault in causing the accident "the evidence advantageous to them is controlling." Such a sweep to infinity is not the law. Liability is one question—the amount of damages is another. Proof of damage is an essential element of a plaintiff's cause of action. Prosser on Torts, 4th Ed., p. 143 (1971). No different standard of review is applied to damages even though fault is found to rest in the appellee. Our standard of review applies to the entire trial, not just the element of liability. Appellee does not on appeal challenge the jury's finding that appellee was 100% at fault. We find appellants' argument unsupported by cogent argument or authority and beyond these prefatory remarks disregard it. *Scherling v. Kilgore,* Wyo.1979, 599 P.2d 1352.

The evidence of damage supports the verdict for each of appellants. We will be as brief as possible in reviewing the evidence favorable to appellee. There were no complaints of injuries made at the scene of the collision. Mrs. Ferris told appellee she was all right. Mr. Ferris admits he had no serious injury, worked steadily and sought no medical attention until after he talked to a lawyer about a month after the occurrence. He was hospitalized for some tests by a Dr. Soroosh and, while there, told the nurses he had no discomfort and felt great.

Mrs. Ferris has an extensive history of motor vehicle accidents and medical problems. Appellee's brief does an excellent job of summarizing those existing prior to the collision, the subject of the action. Our examination of the transcript and exhibits verifies his consolidation of the evidence in that regard:

"(a) Mrs. Ferris has two congenital deformities of the spine. The first is bilateral cervical ribs, which are reported by all of the radiologists, by Dr. Soroosh, and Dr. Lambert reluctantly admitted their existence (Tr. 510–514). This condition can compress nerves and vessels and produce the very symptoms of numbness and tingling in the hands described by Dr. Soroosh in his first report to Mr. Schuster (Tr. 322).

"And second, Mrs. Ferris has a lumbar deformity with a big-sounding name about which it is sufficient to say that before the 1976 Wyoming accident, it caused frequent 'low back pain going into the buttocks; sometimes going into the thighs; maybe on one side, and maybe on both sides.' (Tr. 324, lines 8 through 19).

"(b) In defendant's Exhibit G, a medical history prepared by Mrs. Ferris in 1974, she reports having epilepsy, arthritis, migraine headaches and accidents resulting in unconsciousness and other injuries. A perusal of her medical records indicates that many of these conditions extend back to her childhood.

"(c) In 1962, Mrs. Ferris was involved in an accident and received 'whiplash injuries' from which she reported recurring back pains to Dr. Erickson, who treated her for an unrelated condition at the Bishop Randall Hospital in January of 1971 (see the records and Tr. 447 and 448).

"(d) In 1969, Mrs. Ferris was hospitalized for care after a suicide attempt (defendant's Exhibits L and M) and received medical treatment one month before the February, 1976 Wyoming accident for emotional problems which produced complaints of pain (Tr. 442 and Kucera medical records).

"(e) On May 4, 1971, Mrs. Ferris was involved in a one-car roll-over and was taken to the Bishop Randall Hospital in Lander, where the charts show that she had mid-back pain, contusions and abrasions, and had X-rays which disclose minor spurs on the mid dorsal vertebral bodies (Tr. 356 and 357)."

To add to that, after the February, 1976 collision (this case), she was in another automobile collision in Utah in October, 1976—the one discussed under the first issue. Then even another rear-ender in Gillette in June of 1978.

The appellants had only one of many medical doctors who have attended Mrs. Ferris, as a witness at the trial but he had available to him all of the medical reports of the other doctors, all of which were in evidence and available for use in cross-examination. The only medical expert presented by appellants at trial did not see Mrs. Ferris until three and one-half years after the Togwotee Pass collision. He testified that his examination did not reveal "which accident contributed how much." The medical records indicate that the physician who treated her after the Utah collision followed up with her for many months. The medical evidence indicates and a reasonable inference therefrom can be drawn that her ailments are closely related to the Utah occurrence. While we cannot exactly identify the $365.00 awarded Mrs. Ferris, it is within the range of the evidence as to medical expenses presented. Mr. Ferris' award is justified and includes damages to his vehicle. Though there is considerable medical expense incurred in trying to find something wrong with him, his injuries were slight. There is no cross-appeal by appellee challenging the damages awarded.

We can find no sound reason to disturb the jury's verdict. *Hawkins v. B. F. Walker, Inc.*, Wyo.1967, 426 P.2d 427. Even our view of the evidence, second-hand, discloses a disbelief in the claims of appellants. No passion or prejudice is evident. Our judicial conscience is not shocked. *Oroz v. Hayes*, Wyo.1979, 598 P.2d 432.

Affirmed.