Jack CRANE, as Personal Representative of the Estate of Steven W. Crane, and on behalf of Jack Crane, Carol V. Crane, John Forest Crane III, Jeffrey Charles Crane, Kimberly Ann Crane, and Justin Robert Crane, Plaintiffs-Appellants,

v.

Mark MEKELBURG, Defendant-Appellee.

No. 82–1406.

United States Court of Appeals, Tenth Circuit.

Feb. 23, 1984.

Steven G. Francis, Fischer & Wilmarth, Fort Collins, Colo., for plaintiffs-appellants.

Paul B. Godfrey, Godfrey & Sundahl, Cheyenne, Wyo., for defendant-appellee.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This case involves a wrongful death which occurred in Wyoming. In the single car accident which produced the death of one Steven Crane on June 26, 1980, the statute which comes into play is the Wyoming Wrongful Death Statute, §§ 2–14–201, 202 (1977) and was brought by Jack Crane, the father of the decedent and the personal representative of the decedent on behalf of himself, Carol Crane (the decedent's mother) and the decedent's three brothers and one sister. The allegation is that the defendant Mark Mekelburg operated his car, in which the decedent was a passenger, while intoxicated and in a negligent and careless manner causing the car to overturn. The decedent was ejected from the overturned vehicle and this was the proximate cause of his death and the plaintiffs' claimed damages, including damages for loss of probable future companionship, society and comfort.

The reason that Steven Crane and Mekelburg were on the road was because they had driven from the decedent's family ranch on which they both worked and traveled approximately fifty miles to the Cowboy Bar in Laramie, Wyoming. After their arrival at that bar, they played pool and drank beer and stayed until approximately 1:45 a.m. During that period and before their return, they had been drinking a good deal of beer. The evidence showed that the decedent was more intoxicated than Mekelburg, who drove the vehicle home. It reached a point about ten miles from the ranch when the car left the road, rolled twice and threw the decedent out causing his fatal injuries. Mekelburg was not seriously hurt.

The plaintiffs allege that Mekelburg had been driving seventy miles an hour and had either fallen asleep or failed to operate the automobile properly as a result of his intoxication. Also noteworthy is that Mekelburg's car had failed inspection and had numerous mechanical problems. Mekelburg's version was that he lost control of the vehicle as he rounded a curve and overcorrected in attempting to steer the car back into the road.

The case was tried in the United States District Court for the District of Wyoming and was before a jury of six persons. It found that Mekelburg was 70% negligent and the decedent 30% negligent. The award was $3517.75 to decedent's estate and $10,000 each to the decedent's parents. The award to the parents was reduced by the amount of the decedent's negligence, 30%.

The plaintiffs have called attention to several alleged errors contending that they require this court to reverse and grant a new trial. Also the plaintiffs challenge the jury's verdict on the amount of damage.

The points which are presented by the plaintiff are:

1. That the court erred in admitting defendant's exhibit A, which indicated that Steven Crane's blood alcohol concentration was .19% at the time of his death. This same exhibit reveals that defendant Mekelburg's blood alcohol concentration was .09%. They object to the court's admission of this exhibit because it was not properly authenticated as required by Federal Rule of Evidence 901. No foundation was laid, they said, that it was hearsay, and at the same time prejudicial.

The trial judge in a case such as this has a sense of discretion and an appellate court reviewing his work will refrain from reversing in the absence of a showing of an abuse of discretion. *Mason v. United States*, 719 F.2d 1485, 1490 (10th Cir.1983).

2. Appellants' assertion that this exhibit was not authenticated is without merit. They say that no person testified as to the conditions under which the test was made, or the significance of the test, a matter

which goes to the weight of the evidence, not to its authentication. Officer Thompson, one of those investigating the accident, identified the document as the result of two blood alcohol tests. The trial court's basis for ruling that the document was authentic is not too clear, but it was not an abuse of discretion to rule that there was sufficient evidence to support a finding that the document was that which defendant claimed it to be, a blood alcohol concentration report. This satisfies F.R.E. 901.

Inasmuch as this document meets the requirements of F.R.E. 803(8)(C) in that it is within the definition of the Rule, it is admissible. The rule provides:

"records, reports, statements . . . in any form, of public offices or agencies, setting forth . . . in civil actions . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

Relevancy, as it is used in the Federal Rules of Evidence, is broad and it was within the sound discretion of the trial court to find that the tendered document was relevant and that its relevancy was not substantially outweighed by the danger of unfair prejudice.

Accordingly it was not an abuse of discretion to admit this document in evidence so as to enlighten the court and the jury as to what happened.

3. The next point which is contended is the action of the court in allowing defendant to inquire into the defendant Mekelburg's arrest.

■ Because the pre-trial order specified that there was to be no reference to the arrest during the trial, the plaintiff maintains that it was error to receive this. The defendant agrees that the order specified that there would be no reference to the arrest, however defendant argues that his inquiries were proper. It is defendant's contention that the plaintiff opened the door to this line of questioning during direct examination and hence his inquiries

during cross examination are within the scope of the direct. From a review of the transcript it appears that the questioning by both sides may have implied that Mekelburg had been arrested. Furthermore, there is no showing of any prejudice to the plaintiffs by this line of questioning. Plaintiffs' contentions of unfair surprise cannot stand given the fact that they made no objection on this basis and the transcript reveals that they were prepared to handle it. Therefore, the trial court did not commit error when it allowed defendant to make inquiries into the circumstances of the arrest.

4. The next point which is raised is the jury instructions relative to contributory negligence.

■ Plaintiffs' contention is that the trial court erred in instructing the jury on appellee's theory of contributory negligence. Plaintiffs' position is that there was no evidence that Steven Crane was negligent, and it was therefore error to insert this issue in the case. The case relied upon by plaintiffs is *Gish v. Colson,* 475 P.2d 717 (Wyo.1970) for the proposition that when there is no evidence of contributory negligence, it is reversible error to give an instruction. The examination of the facts of *Gish* reveals that a clear distinction exists between this and the present case. It found that there was no evidence, either direct or circumstantial, that the decedent "acted carelessly or in disregard of his own safety." The situation in this case indicates that the decedent and Mekelburg had been drinking together and there is some evidence that the decedent may have purchased drinks for Mekelburg. Furthermore, the decedent, in some manner, voluntarily acquiesced to getting back into the car with Mekelburg. In view of all this, it cannot be said that the trial court erred in instructing the jury on defendant's theory of contributory negligence.

5. The fourth point which is raised by the plaintiffs pertains to the jury's award of damages.

Plaintiffs contend that the jury verdict was grossly inadequate. They point out

that the jury awarded no damages to Steven Crane's three brothers or his sister. In addition plaintiffs contend that the award to Steven's parents was $10,000 each, when the expert testimony indicated the amount of damages was between $53,869 and $106,917. They claim that the awards were grossly inadequate.

We recognize that the accident here in question which resulted in the loss of a life is a tragic affair and very hard on the surviving parties. Even though this court might have awarded damages on a different plane, this is not the test as to whether the jury's verdict was in error. It is axiomatic that an appellate court places great weight on a jury's verdict and its determination of the amount of damages is inviolate absent an award which is so inadequate as to shock the judicial conscience and to raise an irrestible inference that passion, prejudice, or other improper causes invaded the trial. But we cannot just take a look at the small amount of a verdict and conclude that we must, as a matter of law, presume that bias and prejudice was present. Indeed the opposite is the practice. *Ferris v. Myers,* 625 P.2d 199 (Wyo.1981). *See also Metcalfe v. Atchison, Topeka and Santa Fe Railway Company,* 491 F.2d 892 (10th Cir. 1974).

■ It cannot be said in this case that the jury's award to Steven Crane's parents was, as a matter of law, insufficient since the jury had a right not to believe plaintiffs' expert on the question of damages or, stated differently, the jury was at liberty to give that testimony only such weight as it felt it deserved.

■ Under Wyoming law, the sister and the three brothers could have received damages for "probable future companionship, society and comfort" Wyo.Stat. § 2–14–202. This does not, however, make it necessary to direct an award of damages. The testimony of the siblings indicates past relationships with the decedent and their general opinions as to their future relationships with Steven Crane. The jury was entitled to disbelieve their testimony or to give it as much weight as it felt it deserved.

The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instruction and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers the most reasonable. *Metcalfe v. Atchison, Topeka and Santa Fe Railway Co.,* 491 F.2d 892, 898 (10th Cir. 1974), quoting *Tennant v. Peoria & P.O. Ry.,* 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1944).

■ We must conclude that the decision of the jury to not award damages to the sons and the daughter was within the jury's discretion and this court has no right to intervene.

■ The final issue that is raised by the plaintiff is that the court erred in allowing the pre-trial order to be read. The statement objected to is:

The defendant has also raised affirmative defenses regarding the decedent's assumption of the risk and the existence of a joint venture between the parties.

Plaintiffs, provided a one page transcript which indicated that the trial court made some statement similar to that which is quoted. Although they have provided the one page transcript, they have failed to specify where it appears in the record. The context of the statement is not known to this court because, like defendants, we have been unable to locate the statement in the full transcript. This statement appears to be no more, however, than a simple outlining of the issues as set forth in the pleadings. Such a statement by a trial judge is entirely proper. Plaintiffs' arguments appear to be that the reading of this portion of the order was in error because defendant could not maintain either theory. It is clear that no instruction was ever given to the jury on these theories. Moreover, there is

no showing by plaintiffs of any prejudice resulting.

Therefore, since there are no assertions of error which are capable of leading this court to reverse the case, it is apparent that the trial court properly performed its functions and indeed properly denied plaintiffs' motion for a new trial.