Phyllis THOMAS, Appellant (Plaintiff),

v.

Albert V. METZ, Jr., M.D.,
Appellee (Defendant).

No. 85–142.

Supreme Court of Wyoming.

Feb. 27, 1986.

Steve D. Noecker and Rebecca H. Noecker of Johnson, MacPherson & Noecker, Rawlins, for appellant.

J.E. Vlastos and John Henley of Vlastos & Brooks, P.C., Casper, for appellee.

Before THOMAS, C.J., and BROWN, URBIGKIT, MACY, JJ., and GUTHRIE, J., Retired.

BROWN, Justice.

This is a medical malpractice action brought by appellant Phyllis Thomas against appellee Albert Metz, Jr., M.D. Appellant claimed she was damaged as a result of improper back surgery performed by appellee. Trial to a jury resulted in a verdict for appellee. Appellant presents the following issues:

"It was reversible error for the trial court to admit expert opinions of defendant's witnesses which were based upon defendant doctor's deposition and the opinions of other experts when this type of facts or data is not of the type reasonably relied upon by experts in the field.

"It was reversible error for the trial court to refuse to require disclosure of the underlying facts or data upon which the opinions of the defendant's experts were based prior to the giving of the opinions, or once having allowed the opinions, refusing to strike the opinions when it was disclosed that the facts or data was not of that type reasonably relied upon by experts in the field."

We will affirm.

The facts show that on April 17, 1982, appellant rolled over in bed and experienced pain in her back between her shoulder blades. She was admitted to the hospital that same day, complaining of pain between her shoulder blades, pain in her left arm, and numbness in the left thumb, index finger and middle finger. After consultation and testing by Dr. James Maddy and Dr. Malvin Cole, it was concluded that appellant was suffering a disc herniation at the Cervical 6/Cervical 7 (C–6/C–7) level, primarily on the left side. Neurosurgical consultation was then sought from appel-

lee, who, after evaluation, confirmed the findings of Drs. Maddy and Cole, and recommended that surgery be performed to remove disc fragments that were pressing on the spinal cord and the left C–7 nerve root.

After obtaining appellant's consent, appellee performed surgery to remove the disc fragments. A bone plug was then removed from appellant's hip and placed in the spine to fuse the two vertebral bodies. After surgery, appellant experienced pain on her right side, similar to that previously experienced on the left side. Further testing revealed the bone plug was encroaching upon the C–7 nerve root on the right side. Additional surgery was performed to alleviate the condition on April 27, 1982.

When appellant continued to experience pain, she consulted several physicians in Denver during the months of May and June, 1982. In June of 1982, appellant underwent further surgery in Denver. This surgery was performed by another physician, and consisted of removal of the first right thoracic rib.

The pain persisted. An expert witness for appellant, Dr. John Williams, testified appellant now suffers from a condition known as "hysterical conversion"—where pain is a stress reaction and has no medical, anatomical or physiological basis. Dr. Robert Kelso, a clinical psychologist, examined and evaluated appellant and concluded that he believed "this disorder should show significant improvement within a 12-month period."

Appellant filed the present action on January 25, 1983. As noted above, trial to the jury resulted in a verdict for appellee.

We will consider both of appellant's issues together. Basically, appellant claims the trial court erred by admitting the testimony of appellee's expert witnesses, alleging such witnesses improperly based their testimony upon appellee's apparent discovery deposition and previous opinions given by other physicians.

We have heretofore recognized the need for expert testimony in medical malpractice actions. *Vassos v. Roussalis,* Wyo., 625 P.2d 768 (1981); and *Govin v. Hunter,* Wyo., 374 P.2d 421 (1962). See also, Annotation: Necessity of expert evidence to support an action for malpractice against a physician or surgeon, 81 A.L.R.2d 597 (1962). In *Harris v. Grizzle,* Wyo, 625 P.2d 747, 752 (1981), we said:

"It is well settled that in all but the extraordinary medical malpractice case, the plaintiff has the burden of producing expert testimony to support a prima facie case of negligence. If the origin of the injury is obscure and not readily apparent to a layman, or if there are several equally probable causes of the condition, testimony of a qualified physician is essential to establish a reasonable probability that the physician's negligence caused the injury. This is such a case."

The two expert witnesses who testified on behalf of appellee were Drs. Federico Mora and Philip Gordy. Dr. Mora is a graduate of Harvard Medical school and is a neurosurgeon practicing in New Mexico. He testified he knew appellee and had performed surgery with him on occasion. Dr. Mora further testified he thought the operation performed by appellee was appropriate, followed the proper procedure, and that the bone plug inserted was not too long. To demonstrate, he measured the bone plug in the presence of the jury using a caliper and the CAT scan film of the bone plug. Dr. Mora also explained the complicated nature of the surgery and the various causes of a bone plug protrusion other than the plug being too long.

Dr. Philip Gordy also testified as an expert witness for appellee. Dr. Gordy is a graduate of the University of Michigan Medical School and is presently a consultant in neurosurgery and neurology. He testified he has performed this surgical procedure approximately 1,000 times, and that in his opinion, the bone plug placed by appellee was neither too long nor too far to the right. Dr. Gordy further testified as to the possible cause of a bone plug protrusion other than the same being too long.

Appellant's counsel did not conduct a voir dire examination with respect to the medical qualifications of the witnesses. Appellant's main objection to the testimony of both expert witnesses is that such testimony was improperly based on material not reasonably relied upon by experts. Specifically, appellant claims it was improper for Dr. Mora to rely upon appellee's discovery deposition in giving his opinion at trial. Appellant further claims it was also error for Dr. Gordy to base his opinion upon appellee's discovery deposition, as well as Dr. Mora's deposition.

Rules 702 and 703, Wyoming Rules of Evidence, are pertinent to this case and provide as follows:

"Rule 702. Testimony by Experts

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"Rule 703. Basis of Opinion Testimony by Experts

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

It is significant to note that appellee's deposition was only one of several sources of information Dr. Mora relied upon to base his opinion. When asked what materials he had reviewed to form his opinion, Dr. Mora testifed:

"Basically what I examined is I looked over the hospital records of Ms. Thomas here when she was treated in Casper. I have also looked at hospital records and personal notes of physicians who treated her when she went to Denver later on. Furthermore, I have read the depositions that were given by Dr. Metz, by Ms.

Thomas, and by Dr. Williams, two that come to mind."

And when asked if he felt the surgery performed by appellee was appropriate, Dr. Mora answered:

"Well, basing myself on the hospital record and the review of the X rays, the operation was appropriate."

Dr. Gordy based his opinion upon a review of hospital records, as well as appellee's deposition and depositions from the other physicians. He was then asked:

"Q. Doctor, based upon the information you have reviewed, have you an opinion as to whether or not the surgery performed on April 23, 1982, upon Plaintiff here by Dr. Metz was necessary? Answer yes or no.

"A. Yes, I have an opinion.

"Q. And what is that opinion?

"A. It was absolutely necessary."

Trial counsel for appellant made an objection to the basis for Dr. Mora's expert testimony. After a conference at bench, the trial court ruled that counsel's objection was in the nature of impeachment and counsel would be allowed to thoroughly cross-examine the witness. Nevertheless, appellant's counsel was allowed to voir dire the witness regarding the basis of his opinion immediately after the bench conference. Voir dire was in fact conducted until such time as it appeared to the trial court that the questioning had exceeded the scope of voir dire, and had in fact, entered into the area of cross-examination.

■ Ordinarily, it is within the sound discretion of the trial court whether voir dire of a witness will be allowed, or whether counsel must wait until cross-examination to attack the credibility of an expert witness. Such rulings will not be overturned on appeal absent a showing of prejudicial error. In *Reed v. Hunter*, Wyo., 663 P.2d 513, 517–518 (1983), this court stated:

" * * * [T]he purpose of the identical counterparts in the Federal Rules of Evidence was not to provide for blanket admissibility of expert opinion testimony.

The trial court remains vested with discretion in deciding whether to exclude such testimony because it is deemed unnecessary or not helpful to the trier of the factual issues in reaching an independent conclusion as to the facts. The adequacy of any foundation for such opinion testimony is subject to scrutiny through cross-examination. [Citation.]
* * * "

It should also be noted that if the credibility of an expert witness is still in question after cross-examination, counsel may then move to strike the testimony from the record.

Likewise, it is a recognized rule in this state that rulings as to whether a witness is qualified to testify as an expert are discretionary with the trial court and will not be disturbed unless clearly and prejudically erroneous, and then only in extreme cases. *Reed v. Hunter,* supra; *Coronado Oil Company v. Grieves,* Wyo., 642 P.2d 423 (1982); *Ferris v. Myers,* Wyo., 625 P.2d 199 (1981).

Appellant's trial counsel was allowed to thoroughly cross-examine both expert witnesses, and attack the bases of their opinions for impeachment purposes. Rule 705, W.R.E. provides:

"Rule 705. Disclosure of facts or data underlying expert opinion.

"The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination." [1]

■ Appellant contends the court erred in refusing to require disclosure of facts upon which the experts based their opinions. But as we have already pointed out, the experts did state what records they had reviewed in making their conclusions. Therefore, the experts did disclose the ba-

sis of their opinions. In *Ferris v. Myers,* Wyo., 625 P.2d 199, 204 (1981), we stated:

"While Rule 702, W.R.E. permits use of experts, this does not mean that the trial judge is required to let into evidence just any opinion under the cloak of it coming from a person learned in his field. Before an expert voices his opinion, it is good practice to voir dire as was done here to avoid a premature expression which might influence the jury, particularly in light of a suspected absence of adequate basis. This procedure is under the supervision of the trial court in his authority to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to make the interrogation effective for the ascertainment of the truth. Rule 611(a), W.R.E. Whether the qualification of a witness with respect to his knowledge or special experience is sufficiently established is a matter resting largely in the discretion of the trial judge and his determination is usually final and will not be disturbed except in extreme cases. [Citations]"

It is then within the province of the trier of fact to give whatever credence they may to the expert testimony as well as all the evidence in reaching a verdict.

" * * * The trier of fact must decide what weight is to be given to expert testimony, and it still remains the duty of the trier of the factual issues, whether jury or judge, to determine the credibility of all witnesses, including expert witnesses, and to evaluate the testimony of each in reaching its verdict. [Citations.]" *Reed v. Hunter,* supra, at 518.

■ We are not able to find prejudicial error inasmuch as appellee's two expert witnesses based their opinions *in part* upon the deposition of appellee. Appellant has failed to show how such prejudiced her or how such affected the jury's verdict. Both of the witnesses were qualified as

---

1. Appellant does not claim disclosure of the bases of the experts' testimony was sought be- fore trial.

experts and possessed a great deal of expertise in the area of neurosurgery.

"It is common practice for a prospective witness, in preparing himself to express an expert opinion, to pursue pretrial studies and investigations of one kind or another. Frequently, the information so gained is hearsay or double hearsay, insofar as the trier of the facts is concerned. This, however, does not necessarily stand in the way of receiving such expert opinion in evidence. It is for the trial court to determine, in the exercise of its discretion, whether the expert's sources of information are sufficiently reliable to warrant reception of the opinion. If the court so finds, the opinion may be expressed. If the opinion is received, the court may, in its discretion, allow the expert to reveal to the jury the information gained during such investigations and studies. Wide latitude in cross-examination should be allowed." *Standard Oil Co. of California v. Moore,* 251 F.2d 188, 222 (9th Cir.1957), *cert denied* 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148 (1958).

See also, 3 Louisell & Mueller, Federal Evidence, § 389, p. 655 (1979); and Comment, Wyoming Rules of Evidence 701–706: Opinions and Expert Testimony, 13 Land & Water Law Review 975 (1978).

We have carefully reviewed the issues raised by appellant and are unable to find the trial court committed reversible error in allowing the testimony of appellee's expert witnesses.

Affirmed.